COMMONWEALTH vs. EARL S. COGSWELL.

No. 91-P-126

Plymouth. September 11, 1991. - December 20, 1991.

Present: ARMSTRONG, DREBEN, & GREENBERG, JJ.

*Rape. Indecent Assault and Battery. Limitations, Statute of. Practice, Criminal,* Appeal, Indictment, Severance. *Evidence,* Impeachment of credibility, Cross-examination, Bias. *Witness,* Credibility, Bias.

Where the Commonwealth was unable to produce sufficient evidence to show that the rape of a certain child was perpetrated no earlier than September 30, 1979, the 1985 amendment to G. L. c. 277, § 63, effective September 30, 1985, that extended the statute of limitations from six years to ten years for those offenses that were not time-barred when the amendment became effective, was not retroactively applicable to an indictment returned June 1, 1987, charging rape of the child, and consequently, the charge was time-barred [693-695]; furthermore, where the record failed to disclose specific occurrences of indecent assault and battery on a second child after May 26, 1981, an indictment, returned May 27, 1987, charging indecent assault and battery on a child, was time-barred by the six-year limitations period of G. L. c. 265, § 13B [695].

The judge at a criminal trial did not abuse his discretion by allowing six indictments charging the defendant with sexual assaults on his two stepdaughters to be joined for trial. [695-696]

The defendant at the trial of alleged sexual assaults on his two stepdaughters was prejudiced by the judge's exclusion of a stepdaughter's diary that ostensibly revealed that she was visiting her grandmother on the day of one of the alleged sexual assaults, where the diary was admissible for the purpose of impeaching the stepdaughter's credibility. [696-699]

At the trial of indictments charging the defendant with various sexual assaults on his two stepdaughters, the judge did not err in refusing to exclude evidence regarding efforts by the mother of the alleged victims to convince her daughters to abandon their charges against the defendant where the evidence, tending to show that the mother had prejudged the case, was properly admitted to expose the mother's bias. [699]

o

Commonwealth v. Cogswell.

INDICTMENTS found and returned in the Superior Court
Department, three on May 27, 1987, and three on June 1,
1987, respectively.

The cases were tried before *Robert W. Banks*, J.

*Donald A. Harwood* for the defendant.

*Robert C. Thompson*, Assistant District Attorney, for the
Commonwealth.

GREENBERG, J. The six indictments[1] on which the defend-
ant was convicted after a jury trial arose out of alleged sex-
ual assaults on his two stepdaughters, whom we shall call
Yvette and Zoe. After considering the several issues raised
by the defendant on appeal, we conclude that the convictions
on the indictments encompassing both girls' accusations must
be reversed.

We recite the highlights of the evidence produced by the
Commonwealth, described in the order in which they oc-
curred. Both girls first met the defendant in 1977 while he
worked in Brockton as the operator of an ice cream truck
business. The defendant and the girls' mother began a ro-
mantic relationship sometime in 1978. About a year later, in
1979 (the precise date is discussed below as it governs the
statute of limitations), Zoe, who was eleven years old,
Yvette, who was seven, and their brothers moved into the
first-floor apartment of a two-family home on St. Casimir
Avenue in Brockton. The defendant assumed occupancy of
the second-floor apartment of this building at the same time.
During the moves, the defendant asked Zoe to carry a few
boxes upstairs for him and then, according to her testimony,
followed her into a room, closed the door, and forced her to

---

[1]The grand jury returned two sets of indictments against the defendant.
The first set, returned on May 27, 1987, comprised the allegations by
Yvette. On June 1, 1987, the grand jury returned three more indictments
setting forth Zoe's allegations. The specific charges were indictments Nos.
84011 and 84012 charging the defendant with rape of a child, Yvette
(G. L. c. 265, § 22A); indictment No. 84013 charging the defendant with
indecent assault and battery on Yvette, a child under fourteen (G. L.
c. 265, § 13B); indictment No. 84052 charging the defendant with rape of
a child, Zoe (G. L. c. 265, § 22A); and indictment Nos. 84053 and
84054 charging the defendant with the rape of Zoe (G. L. c. 265,
§ 22[b]).

have sexual intercourse with him. The defendant warned Zoe that, if she said anything about the incident, she would never see her mother again.

Zoe described two similar incidents. In the fall of 1985, she stayed home from school for several days because of a back ailment. While her mother was out, the defendant (who had since married the girls' mother) summoned Zoe into his bedroom, threw her down on the bed, and again forced her to have sexual intercourse with him. Zoe next described an incident in the spring of 1986, in which the defendant forced her, quite violently, to perform oral sex on him in the bathroom of a Halifax home where the family had relocated. Again, he ended the episode by issuing threats, telling Zoe that she would not see her mother again if she tried to tell her about what had transpired.

Yvette, Zoe's sister, testified that she would often sleep next to the defendant after the family moved into the St. Casimir Avenue home, and she described how he began to fondle her when they were in bed. As she grew older, the defendant's demands for sexual favors intensified. He started demanding "hand jobs," forced her to perform fellatio, and later made her have intercourse with him. Yvette also recounted how the defendant threatened that he would "get her in trouble with her mother" if she did not comply or if she revealed what had happened.

For his part, the defendant testified that he did not commit any of the assaults described by the two sisters. He offered that the accusations were the product of a very strained and troubled relationship that he had with the children. His most specific defense was aimed at Yvette's second accusation of rape, which she related in no uncertain terms occurred on Thanksgiving Day, 1986. During both the presentation of his own case and the cross-examination of Yvette, the defendant unsuccessfully attempted to show that neither Yvette nor he was in the home at the time the attack was supposed to have taken place. We develop additional facts as necessary to discuss each issue raised on appeal.

1. *The statute of limitations question.* Indictment No. 84052 charged the defendant with forcibly raping Zoe "on or between August 1, 1979, and September 30, 1979." The defendant moved prior to trial to dismiss the indictment based on the statute of limitations.[2] At the close of the Commonwealth's case, the defendant moved for a required finding of not guilty pursuant to Mass.R.Crim.P. 25, 378 Mass. 896 (1979); however, he did not raise the statute of limitations issue. Prior to ruling on the motion, the judge discussed this question on his own initiative. The motion was denied. The defendant continues to press the issue on appeal.

General Laws c. 277, § 63, sets forth the statute of limitations for the offense of rape of a child. At the time the offenses occurred, § 63 provided a six-year period of limitations. This limitations period was extended in July, 1985, by force of St. 1985, c. 123, to ten years, effective September 30, 1985. The ten-year limitations period applies to those offenses that were not time-barred when the amendment became effective. *Commonwealth* v. *Rocheleau*, 404 Mass. 129, 130 (1989), citing *Commonwealth* v. *Bargeron*, 402 Mass. 589, 592 (1988). Consequently, with respect to the earliest rape indictment involving Zoe, the Commonwealth was required to produce sufficient evidence to show that the crime was perpetrated no earlier than September 30, 1979, if the ten-year limitations period were to apply retroactively.

The testimony regarding the specific date when the rape occurred was inconclusive. Zoe testified that the defendant assaulted her on the day her family moved into a new apartment on St. Casimir Avenue in Brockton in the summer of 1979, "before she started the sixth grade." Zoe also remembered that the defendant had driven his ice cream truck that day, but added that "if it was nice," the ice cream vending season would "at times" extend into October.

[2]The motion was denied. A memorandum and order of the motion judge was issued on October 20, 1988. The defendant filed a motion for reconsideration on March 13, 1989, based on this same argument, which was denied by the trial judge on the first day of trial.

When reviewing the denial of a motion under Mass.R.Crim.P. 25, we must examine the evidence in the light most favorable to the Commonwealth. *Commonwealth v. Kelley*, 370 Mass. 147, 150 (1976). *Commonwealth v. Ortiz*, 408 Mass. 463, 464 (1990). *Commonwealth v. Pimental*, 25 Mass. App. Ct. 971 (1988). Zoe's testimony, which was the only evidence produced by the Commonwealth going to the date of the incident, indicated that the rape happened before she entered the sixth grade. It follows that the evidence was insufficient to satisfy a rational trier of fact beyond a reasonable doubt that the offense occurred on or after September 30, 1979. *Commonwealth v. Latimore*, 378 Mass. 671 (1979).

The defendant also argues that the charge of indecent assault and battery involving Yvette was time-barred. Although the conviction of this indictment (No. 84013) was placed on file, and, "[o]rdinarily, we do not consider appeals from indictments placed on file, *Commonwealth v. Delgado*, 367 Mass. 432, 438 (1978), . . . in the interest of efficiency and in a suitable case we may choose to do so. See *Commonwealth v. Bianco*, 388 Mass. 358, 364-365 (1983)." *Commonwealth v. Chappee*, 397 Mass. 508, 523 (1986). *Commonwealth v. O'Brien*, 30 Mass. App. Ct. 807, 807-808 n.1 (1991). Here, the filed indictment is also clearly time-barred, with the record failing to disclose specific occurrences after May 26, 1981.[3]

2. *Severability of the two sets of indictments.* The defendant argues that the motion judge's refusal to sever Zoe's indictments for trial from those involving Yvette was prejudicial and constitutes ground for reversal. Indictments may properly be joined for trial if the offenses "arise out of a course of criminal conduct or series of criminal episodes connected together." Mass.R.Crim.P. 9(a), 378 Mass. 859 (1979). The crux of the defendant's argument is that Yvette

---

[3]Although St. 1985, c. 123, extended the statute of limitations for the offense of rape of a child, it did not amend or extend the six-year statute of limitations for the offense of indecent assault and battery of a child, G. L. c. 265, § 13B. See *Commonwealth v. Bargeron*, 402 Mass. at 592.

and Zoe's accusations of sexual abuse, although alleged to have taken place in the same locations, describe independent offenses, not related within the meaning of Mass.R.Crim.P. 9(a)(1).[4]

The defendant must show that the motion judge clearly abused his discretion in failing to sever the indictments. See *Commonwealth* v. *Sylvester*, 388 Mass. 749, 753-758 (1983). Here, the defendant's modus operandi was consistent. All the incidents occurred while the defendant was living with the complainants' mother. With one exception, each allegation of sexual abuse took place while the defendant was living in the same household as the complainants, and on each occasion the defendant used his apparent authority to force them into submission. Cf. *Commonwealth* v. *Mamay*, 407 Mass. 412, 416 (1990) (physician used his position of authority and trust to commit sexual crimes upon patients visiting his office). See also *Commonwealth* v. *Pope*, 392 Mass. 493, 502-503 (1984). Finally, both Yvette and Zoe testified that the defendant repeatedly threatened both of them that he would disrupt their relationships with their mother if they failed to submit or told anyone.

The defendant suggests that *Commonwealth* v. *King*, 387 Mass. 464 (1982), is distinguishable. We think not. In that case, the court found no error in the admission of evidence showing that the defendant had also performed oral sex on the victim's younger brother, both children lived in the same house with the defendant, the sexual acts took place during the same time period, the victims were of similar age, and the form of sexual conduct was similar. The evidence here, as in the *King* case, "showed a common pattern or course of conduct toward the two children," *id.* at 472, and the judge did not abuse his discretion by allowing the charges to be tried jointly.

---

[4]The judge stated the grounds for denying the motion as the "similarity between the allegations, the time period involved, and the interest of efficiency and the fact that evidence of bad acts might well bring the entire cross-action in front of a jury."

3. *Exclusion of the diary.* As noted, Yvette testified that the defendant forced her to have intercourse with him in the upstairs bathroom of the family's Halifax home on Thanksgiving Day, November 27, 1986. During cross-examination, defense counsel tried to impeach Yvette with entries in her diary that ostensibly revealed she was visiting her grandmother in Dorchester on that day. Yvette denied writing the entries for November 26 and 27 and suggested that other entries describing the defendant's sexual abuse of her were now missing.[5] She clearly remembered, however, writing every other entry shown to her by defense counsel. While the judge allowed extensive questioning regarding this discrepancy, he excluded the diary as an exhibit, indicating that the jury "have the testimony and all of the evidence."[6]

The defendant adamantly denied committing any of the sexual assaults described by both Yvette and Zoe. Regarding

---

[5]In order to clarify this point, we set out here part of the exchange where Yvette denied writing the entries.

Q. "The notation '11-26-86,' is that your handwriting?"

A. "I do not remember writing this."

Q. "You don't remember writing that?"

A. "No, I don't."

Q. "Can you identify that as your handwriting?"

A. "It looks like it but I don't remember writing this."

Q. "And the next day, 'November 27 of '86, today's Thanksgiving. I'm in Gram's. Got up at 7. Helped her with dinner at 2:30. Went up Pat's and watched movies. Went to bed at 2:00.' Do you remember writing that?"

A. "No, I don't."

Q. "That would be Thanksgiving Day?"

A. "I don't remember writing that."

Q. "Does that refresh your memory or in any way assist your memory that a notation was made in your diary, today is Thanksgiving of '86, that you got up at 7 in the morning and helped with dinner, that you ate at 2:30 in the afternoon, watched movies with Pat until 2 o'clock in the morning?"

A. "I don't remember writing that."

Q. "Can you identify your writing anywhere in this diary? Do you agree that the entries here are your handwriting?"

A. "That's my writing there."

[6]Only a copy of the diary was available because the original had been lost. The judge did not exclude the diary on either authentication or best evidence grounds, and there is no suggestion that the diary could have been excluded for those reasons.

the Thanksgiving Day incident, he testified that Yvette and the other children were visiting their aunt and grandmother, and he offered that during the alleged time of the attack he was delivering meals to the elderly, a service which he performed as a Kiwanis Club member.

We agree with the defendant that the diary was admissible for the purpose of impeaching Yvette's credibility and conclude that the defendant suffered prejudice as a result of this ruling. The Commonwealth's case depended almost entirely on the complainants' credibility. "When evidence concerning a critical issue is excluded and when the evidence might have had a significant impact on the result of the trial, the right to present a full defense has been denied." *Commonwealth* v. *Fayerweather*, 406 Mass. 78, 84 (1989), quoting from *Commonwealth* v. *Bohannon*, 376 Mass. 90, 94 (1978). See also *Chambers* v. *Mississippi*, 410 U.S. 284, 294-295 (1973); *United States* v. *Nixon*, 418 U.S. 683, 707-713 (1974); *Commonwealth* v. *Franklin*, 366 Mass. 284, 288-291 (1974); *Commonwealth* v. *Chase*, 372 Mass. 736, 746-748 (1977).

It cannot be denied that the diary entry contradicted Yvette's testimony with respect to the Thanksgiving Day rape and therefore impugned her credibility as a complaining witness on the remaining accusations. The effectiveness of the defendant's cross-examination would have been enhanced had the jury been able to examine the November 26 and 27 entries in the diary given Yvette's lapses. We also note that the girls' maternal grandmother and aunt both directly supported Yvette's assertion that there was no Thanksgiving get together, making the diary admissible to impeach their credibility as well. We believe the members of the jury were deprived of the opportunity to consider fully the weight of this evidence. Cross-examination may indeed be "the greatest legal engine ever invented for the discovery of truth," 5 Wigmore, Evidence § 1367 (Chadbourn rev. 1974), but we find here that a closer examination of the entries and the other writings contained in the diary might have swayed the jury on the critical issue of Yvette's believability. Because we conclude that this evidentiary exclusion was not "harmless be-

yond a reasonable doubt," see *Chapman* v. *California*, 386 U.S. 18, 24 (1967), we need not decide whether the error was of constitutional magnitude.

Where there was a common pattern described in the testimony of both sisters, we cannot exclude the real possibility that the contents of the excluded diary might have cast doubt as to Zoe's claims. From the evidence, the jury could have inferred that each sister kept her story from the other. We cannot discount in such a volatile case that a "suggestibility factor" may have been at work.[7] The evidence permits a finding that both girls ultimately made a near-simultaneous report of their past abuse by the defendant. On cross-examination of both complainants, defense counsel developed a common theme regarding a motive for their giving false testimony. He probed their possible animosity and anger toward the defendant and their mother because of discipline, curfews, and drug and alcohol use within the household. In such a case, where the Commonwealth elected to join the respective indictments concerning assaults of each girl for a joint trial, the over-all effect of Yvette's contradictory diary entries may have created a "seepage . . . of [impeachment] evidence," otherwise admissible against Zoe, as well. Compare *Commonwealth* v. *Beneficial Fin. Co.*, 360 Mass. 188, 221 (1971), cert. denied, 407 U.S. 910, 914 (1972).

4. *Erroneously admitted evidence.* Lastly, the defendant argues that the judge failed to exclude prejudicial evidence regarding the mother's efforts to convince her two daughters to abandon their complaints against the defendant. This evidence was admitted during the Commonwealth's cross-examination of the mother and through the testimony of the girls' grandmother. The evidence tended to show that the mother had prejudged the case, and thus the statements were properly admitted to expose the mother's bias. *Commonwealth* v. *Henson*, 394 Mass. 584, 587 (1985). The prejudicial effect of

---

[7]See Dorris, The Suggestibility of Children's Recollections (1991), in which several experts question the reliability of children's testimony in sexual abuse cases, especially in periods of stress, such as during a trial.

these statements did not outweigh their probative value; there was no error.[8]

The judgments on all the indictments are reversed, and the verdicts are set aside. Judgment is to be entered for the defendant on indictment Nos. 84013 and 84052.

*So ordered.*

---

[8]Because of our decision to reverse, we do not address the defendant's argument regarding the denial of a mistrial based on the Commonwealth's failure to inform defense counsel that Yvette had implicated her mother in a statement to the prosecuting attorney one week prior to the trial. We do not anticipate that this issue will arise at any new trial.