COMMONWEALTH *vs.* JORGE LUIS HUERTAS. No. 91-P-1376. May 24, 1993. *Witness*, Bias. *Evidence*, Cross-examination.

The sole issue in this appeal is whether the trial judge committed reversible error by refusing to allow the defendant to elicit from the prosecution's chief witness the fact that he, the witness, was being held in a juvenile detention center as a material witness at the time of trial. The defendant argues that this information should have been available to the jury in order to show possible bias and motive to lie. We affirm the defendant's convictions by a jury of two counts of murder in the second degree and of illegally carrying a firearm.

On August 13, 1989, two men were murdered when they tried to purchase cocaine. A juvenile named Ernest[1] observed the murders and, within hours, gave the police a statement implicating the defendant. On the day of trial Ernest was in the custody of the Commonwealth as a material witness. He had been picked up on a warrant the week before trial and was being held at a juvenile facility. No charges had ever been filed against him, and the only reason he was being held was because he was deemed a material witness by the Commonwealth. The defendant sought to establish that Ernest was being detained at the juvenile center but the judge refused to allow any inquiries on this subject.

The defendant argues that his counsel's twofold purpose in asking Ernest about his detention was to show (1) that his testimony was influenced by the fact of his being held as a material witness and (2) that he had the opportunity and motive to fabricate false testimony with another key person in the case, also a juvenile. The Commonwealth contends that the defendant objected at trial because he wanted to inquire about the relationship between the two juveniles, while on appeal he pursues an entirely different theory.

At the time of the defendant's challenge to the judge's evidentiary ruling, defense counsel stated:

---

[1]The name of the juvenile is fictitious.

"First of all, I would ask that I be allowed to ask the question to the effect that he had to be picked up to be here, and in light of an adverse ruling by the Court, I would note an objection to that. Other questions I have concerning — that I would go into, so far as the fact that he is in the Juvenile Detention Center, if Your Honor prohibits me from asking why he is here."

At this point, it appears that defense counsel wanted to explore the issue of Ernest's detention as a material witness. However, the response of the judge and the discussion that followed indicate otherwise:

JUDGE: "All you've got to do is tell me where it's material or relevant. As a matter of fact, I would think those kind[s] of questions might better be sought by the prosecutor."

DEFENSE COUNSEL: "Whomever it's sought by, your Honor, the reason why I want to ask him a question [about where he is being held] is because he is in there with another person whose name will be mentioned several times during the course of this trial."

Defense counsel repeated this theory of defense later when he said to the judge:

"I'm not asking him as far as whether or not he is being held as a material witness. What I'm saying is I need to show that they [the juveniles] are together, they have been together for at least the past week and the fact they have had conversations about this case. I want to show that there is a relationship between the two."

Indeed, the judge gave defense counsel the opportunity to conduct a voir dire and to explore fully the issue of Ernest's detention as a material witness. The judge said: "When he [Ernest] is finished testifying, we can voir dire him and you can ask him and see where you go from there." During the voir dire the defendant's counsel asked Ernest a number of questions about where he was being held and Ernest's involvement with the other juvenile while they were both at the juvenile facility. At the conclusion of the voir dire, after Ernest testified that he had not discussed with the other juvenile the testimony that he [Ernest] was going to give at trial, defense counsel stated: "I'm not going to go any further with it, with the witness on the record with the jury."

We start with the general premise that the defendant cannot assert an argument on appeal that was not raised below. "A lawyer cannot try a case on one theory and then, having lost on that theory, argue before an appellate court about alleged issues which might have been, but were not, raised at the trial . . . . The appeal must be based on what took place at the trial, not on anything which is presented for the first time before an

appellate court." *Commonwealth* v. *Olson*, 24 Mass. App. Ct. 539, 544 (1987), citing *Commonwealth* v. *Johnson*, 399 Mass. 14, 15 (1987).

The record reveals that, while counsel may have started out with a two-fold purpose in examining the witness, he subsequently repeated to the judge that the basis for his examination was to expose the relationship between the juveniles, on the theory that while both were held in the juvenile facility, they had conspired to fabricate a story implicating the defendant. The record indicates that once counsel was satisfied that Ernest had not discussed the case with the other juvenile, he decided not to pursue the theory any further. Consequently, we conclude that the defendant waived any claims he may have had that Ernest's testimony was influenced by the fact of his detention as a material witness.

Passing the question whether the defendant properly has preserved his claim on appeal, we see no abuse of discretion. A criminal defendant has a right to cross-examine a witness for the purpose of showing bias. *Davis* v. *Alaska*, 415 U.S. 308, 316-317 (1973). *Commonwealth* v. *Hogan*, 379 Mass. 190, 192 (1979). *Commonwealth* v. *Johnson*, 16 Mass. App. Ct. 935, 936 (1983). "The trial judge, however, retains the discretion to appraise the materiality of the testimony sought to be introduced." *Commonwealth* v. *Johnson*, 16 Mass. App. Ct. at 936-937, citing *Commonwealth* v. *Haywood*, 377 Mass. 755, 761 (1979). There is no support in the record that Ernest in fact feared criminal charges or had a motivation to fabricate charges against the defendant. See *Commonwealth* v. *Allen*, 29 Mass. App. Ct. 373, 378 (1990). It is worth noting that Ernest's trial testimony, in which he identified the defendant as the shooter, was consistent with the statement he gave to the police almost immediately after the murders. The defendant was unable to show that the witness's testimony "changed once he became susceptible to official pressure [being detained as a material witness]." *Commonwealth* v. *Haywood*, 377 Mass. at 762. Although he failed to report certain minor details to the police at the time he made his statement, where, as here, "the witness's trial testimony substantially tracked [his] earlier statement[], . . . the judge was within his discretion in concluding that no bias would be shown by introduction" of the fact that Ernest was being held as a material witness. *Commonwealth* v. *Johnson*, 16 Mass. App. Ct. at 937.

*Judgments affirmed.*

*Carol A. Donovan*, Committee for Public Counsel Services, for the defendant.

*Judith Ellen Pietras*, Assistant District Attorney, for the Commonwealth.