COMMONWEALTH VS. EDWARD L. QUEGAN.

No. 92-P-567.

Plymouth. February 10, 1993. - August 13, 1993.

Present: PERRETTA, GREENBERG, & LAURENCE, JJ.

*Evidence*, Relevancy and materiality, Bias, Cross-examination, Fresh complaint. *Witness*, Bias. *Practice, Criminal*, Judicial discretion, Argument by prosecutor.

At the trial of indictments charging the defendant with the forcible rape of his daughter, the judge did not abuse his discretion in refusing to permit the defendant to cross-examine the victim's maternal grandmother about two prior accusations by her of sexual abuse of the victim by two other family members for the purpose of showing bias, where the grandmother's credibility was not the critical issue at trial; where, notwithstanding the defense theory that the evidence was relevant to show that the grandmother used the accusations as a device to secure custody of her grandchildren, the defendant presented no evidence that the excluded accusations had ever actually been used; where the record was devoid of any evidence warranting a legitimate inference, let alone a finding, of the falsity of the alleged previous allegations; and where, in light of defense counsel's successfully establishing the grandmother's bias toward the defendant and motive in making adverse statements about him in his cross-examination of her and in his direct examination of the defendant, any error in refusing to admit the prior accusations, even if it amounted to an abuse of discretion, was not prejudicial. [132-135]

At the trial of indictments charging the defendant with the forcible rape of his daughter, evidence in the form of the victim's maternal grandmother's description of the victim's disclosures to her was not inadmissible hearsay, bur rather was properly admissible fresh complaint testimony that did not exceed the limits of corroboration. [135]

There was no merit to the contention of a defendant charged with the forcible rape of his daughter that the prosecutor prejudicially smeared his character by unfair cross-examination regarding his role as a parent and, in any event, any transgressions by the prosecutor were not egregious, so that any resulting error was harmless. [135-136]

INDICTMENTS found and returned in the Superior Court Department on February 8, 1988.

The cases were tried before *Charles J. Hely*, J.

*Benjamin H. Keehn*, Committee for Public Counsel Services, for the defendant.

*John E. Bradley*, Assistant District Attorney, for the Commonwealth.

LAURENCE, J. Edward L. Quegan was convicted on two indictments charging forcible rape of his daughter, Deborah,[1] in 1982 and in 1983, when she was four and five years old, respectively.[2] His principal contention on appeal is that he was prejudicially denied his right to present a defense by the judge's refusal to permit him to cross-examine Deborah's maternal grandmother, Virginia Van Horne,[3] about two prior accusations by Mrs. Van Horne of sexual abuse of Deborah by two other family members. We find no merit in this or Quegan's other appellate arguments.

Following a violent confrontation over Quegan's visitation rights in May, 1984, during which Quegan physically assaulted Deborah and others,[4] Deborah began, initially at the behest of the Probate Court, seeing family therapists on a regular basis. Starting in January, 1985, she gradually revealed to caseworkers and therapists facts indicating that her father had sexually abused her. By April, 1985, Deborah had disclosed that, in the course of visitations at her father's home, she used to take showers with Quegan, during which "he told me to touch his pee pee and then he peed on me"; that similar incidents occurred in Quegan's bed; that "this

---

[1] A pseudonym.

[2] The defendant and Deborah's mother, Victoria, had divorced in 1981.

[3] Mrs. Van Horne, as of 1982, was guardian and had legal custody of Deborah. The defendant enjoyed visitation rights until some time after May, 1984.

[4] On May 18, 1984, Quegan came to the Van Horne residence to pick Deborah up for a scheduled visitation. After being told that Deborah could not go out because she had a fever, Quegan became belligerent, then violent, throwing his ex-wife across a table, choking her and repeatedly striking her in the face; grabbing, then dropping, Deborah on her head while she cried and screamed, injuring her eye; pushing and shoving another daughter; and kicking Mrs. Van Horne in the head, breaking her glasses. Quegan pleaded guilty to criminal assault and battery charges that arose from this incident, after which he ceased to have visitation rights.

happened with my daddy every time I saw him"; that on one occasion Quegan "told me to put his pee pee in my mouth. It was runny. Then he licked my pee pee"; that Quegan told her "he had a gun . . . [and] was going to shoot her head off if she told anybody"; that she was terrified Quegan would break into her house to find her; and that she hated him.

Indicted as a result of these disclosures, Quegan filed a motion in limine seeking to allow his counsel "to inquire into [false] allegations [by Mrs. Van Horne] of sexual abuse of the alleged victim by one Kirk Littlefield and Michael Logan."[5] At the hearing on the motion, Quegan's counsel explained that the purpose of the intended evidence was to establish bias and motive on the part of Mrs. Van Horne, on the theory that she was a vindictive liar who had manipulated Deborah into making false charges against Quegan as part of Mrs. Van Horne's efforts to wrest Deborah away from her parents, whom Mrs. Van Horne considered unfit.[6] The motion judge (who was also the trial judge) denied Quegan's motion on the ground of lack of relevance. He repeated his ruling when Quegan's counsel sought reconsideration during cross-examination of Mrs. Van Horne and again when Quegan sought a postsentence stay pending appeal.[7]

---

[5]Michael Logan is a fictitious name because this accused person was at the time, and remains, a minor.

[6]A psychiatrist examining Deborah in July, 1984, took a family history from Mrs. Van Horne and recorded in his notes that Mrs. Van Horne reported that Kirk Littlefield, a twenty-five year old son of Deborah's mother's live-in boyfriend, had once molested Deborah and was convicted of molesting an eleven year old girl. Littlefield was in fact prosecuted for, and pleaded guilty to, molesting Deborah's half-sister. At Quegan's probable cause hearing in August, 1986, Deborah testified that Littlefield had put his hand on her "bum" and said that she had once told her grandmother that he had touched her "pee pee." The second allegation was that Mrs. Van Horne, in April, 1984, told a Department of Social Services caseworker that Michael Logan, the nine year old son of Quegan's then-fiancee, had put his hand in Deborah's "bum." Deborah, when questioned about this, confirmed to the caseworker that the boy had put his hand on her "bum" over her clothes. The caseworker told Deborah to tell the boy not to do it again and to inform adults if he did.

[7]The judge also cited, as a "secondar[y] . . . alternative, additional, independent ground" for his denial, the "rape shield statute," G. L. c. 233,

The judge's exclusion of the evidence of the prior accusations was not erroneous. The determination whether evidence is legally relevant is within the discretion of the trial judge. *Commonwealth* v. *Chasson,* 383 Mass. 183, 187 (1981). Determining whether relevant evidence demonstrates bias also falls within that discretion. *Commonwealth* v. *Lavelle,* 414 Mass. 146, 153 (1993). Although a criminal defendant has a right to reasonable cross-examination of a material witness for the purpose of showing bias, the "trial judge . . . retains the discretion to appraise the materiality of the testimony sought to be introduced." *Commonwealth* v. *Huertas,* 34 Mass. App. Ct. 939, 941 (1993), quoting from *Commonwealth* v. *Johnson,* 16 Mass. App. Ct. 935, 936-937 (1983). Quegan has failed to demonstrate abuse of discretion by the judge in any respect.

In the first place, Mrs. Van Horne was not a key witness against Quegan. She testified as a fresh complaint witness; her testimony was limited to corroborating Deborah's disclosures. Consequently, her credibility was not the critical issue at trial. Contrast *Commonwealth* v. *Joyce,* 382 Mass. 222, 230 (1981), and *Commonwealth* v. *Stockhammer,* 409 Mass. 867, 876 (1991) (the complainant witness's credibility was of critical importance, since she was the sole witness on the central issue of consent to sexual intercourse); *Commonwealth* v. *Piedra,* 20 Mass. App. Ct. 155, 156, 158 (1985) (witness whose bias defendant sought to show was "the key prosecution witness," whose "credibility . . . was 'essential to the proof of the defendant's guilt' "); *Commonwealth* v. *Pyne,* *ante* 36, 39-40 (1993) (defendant prevented from questioning alleged victim about prior false accusation in similar circumstances).

Notwithstanding the defense theory that the evidence was relevant to show Mrs. Van Horne's "proclivity for trafficking in accusations of child molestation . : . as a strategic device in her efforts to secure custody of" her grandchildren, Quegan presented no evidence that the excluded accusations

---

§ 21B. The Commonwealth on appeal does not rely on that statute as a ground for upholding the judge's exclusion of the proffered evidence.

had ever actually been so used. Indeed, he did not even offer any evidence supporting his implicit contention that Mrs. Van Horne had in fact used Deborah's charges of his sexual molestation in resisting his 1984 attempt to secure her custody for himself. Nor was there any evidence adduced at trial indicating that Mrs. Van Horne had put Deborah up to making false accusations against Quegan. Any logical predicate or nexus for the relevance of the excluded evidence was thus conspicuously absent, beyond tenuous, speculative assertion.

Most significantly, Quegan has lost sight of the principle that "[w]ithout evidence of [their] falsity, the [prior] statements [about sexual abuse attributed to Mrs. Van Horne] became irrelevant to any issue in the case, including the credibility of the" witness. *Commonwealth v. Sherry*, 386 Mass. 682, 692 (1982). See also *Commonwealth v. Scanlon*, 412 Mass. 664, 675-676 (1992); *Commonwealth v. Lefkowitz*, 20 Mass. App. Ct. 513, 515-516 (1985); *Commonwealth v. Hicks*, 23 Mass. App. Ct. 487, 490-492 (1987); *Commonwealth v. Rathburn*, 26 Mass. App. Ct. 699, 710 (1988). Quegan has cited no Massachusetts authority to the contrary.[8] The record is devoid of any evidence warranting a legitimate inference, let alone a finding, of the falsity of Mrs. Van Horne's alleged previous accusations.[9]

---

[8]*Commonwealth v. Joyce*, 382 Mass. 222, 230 (1981), Quegan's principal case on this issue, is distinguishable and does not support, but rather undercuts, his position. There the defendant, accused by the complainant of rape, asserted that the intercourse had been consensual and sought to introduce the complainant's arrest record for prostitution in order to establish her motivation to accuse the defendant falsely of rape to avoid further prosecution. In *Joyce*, unlike the instant case, the credibility of the witness sought to be impeached (the complainant) was critical, she being the sole witness on the issue of lack of consent, and the impeaching evidence was uncontestably accurate. Moreover, the rationale of the decision was reflected in the court's observation that "The right to cross-examine a complainant in a rape case to show a *false* accusation may be the last refuge of an innocent defendant." *Id.* at 229. (Emphasis supplied.)

[9]Assuming that Mrs. Van Horne had made such accusations (at least one of which she denied), they were essentially corroborated by Littlefield's conviction, Deborah's statements to her therapists, and Deborah's probable cause testimony. See *supra*, note 6.

Quegan has also overlooked the fact that, "[i]f a defendant believes that the judge improperly restrained his cross-examination of a witness [with respect to bias], the defendant must demonstrate that the judge abused his discretion *and that he was prejudiced by such restraint.*" *Commonwealth* v. *Barnes,* 399 Mass. 385, 393 (1987) (emphasis added). Here, the judge's ruling did not preclude exploration of the subject of Mrs. Van Horne's bias against Quegan and any motives she may have had to make adverse statements about him — even though such issues were not, contrary to Quegan's perfervid rhetoric, crucial to his cause.[10] Quegan's counsel successfully established such bias and motive in his cross-examination of Mrs. Van Horne and in his direct examination of Quegan. His efforts included eliciting her personal dislike of Quegan; her long-held suspicions of his deviant behavior; her repeated references to his "lying"; her persistent efforts to obtain and retain custody of Deborah and her other grandchildren, in vehement opposition to their parents; and her allegedly corrupt motives in seeking to rid herself of Quegan, involving her acquisition of title to Quegan's former home and her supposed desire to control the proceeds of a tort action settlement placed in trust for Deborah. Moreover, the jury, urged by the judge and counsel to apply their common sense and experience to the evidence, had to have been acutely aware of Mrs. Van Horne's animosity toward the man who had, as she perceived it, ruined her daughter, repeatedly molested her granddaughter, and violently battered most of her family.

---

[10]Quegan's effort to establish prejudice consists almost entirely of conclusory, impassioned declarations, such as "the exclusion of the evidence of Mrs. Van Horne's history of trafficking in accusations of child molestation . . . almost certainly doomed the defendant"; "the rulings 'cut the heart out of the defense,' "; "[the] case . . . turned entirely on [Mrs. Van Horne's] credibility, [and] the judge's rulings unfairly deprived the defendant of his only effective means for demonstrating a basis to doubt the truthfulness of the charges"; and "the entire defense turned" on proof of Mrs. Van Horne's bias and credibility. Such exaggerated and inaccurate observations regarding a mere fresh complaint witness did not advance the credibility of Quegan's appellate presentation.

In light of the extensive eduction of evidence limning Mrs. Van Horne's attitudes in ways that plainly raised the issues of her bias and hostile motivation toward Quegan and unmistakably impugned her credibility, any error in refusing to admit the prior accusations, even if it amounted to an abuse of discretion, was not prejudicial. See *Commonwealth* v. *Hicks,* 377 Mass. 1, 8 (1979); *Commonwealth* v. *Elder,* 389 Mass. 743, 749-751 (1983); *Commonwealth* v. *Lavelle,* 414 Mass. at 154; *Commonwealth* v. *Johnson,* 16 Mass. App. Ct. at 937; *Commonwealth* v. *McNickles,* 22 Mass. App. Ct. 114, 117-119 (1986); *Commonwealth* v. *Heath,* 24 Mass. App. Ct. 437, 444-445 (1987).

Quegan's other appellate issues require little discussion. Mrs. Van Horne's description of Deborah's disclosures was not inadmissible hearsay, but rather was properly admissible fresh complaint testimony which did not exceed the limits of corroboration.[11] It accurately recited what Deborah had said and done. It did not fill in any substantive gaps in the prosecution's case. It did not reveal other acts of sexual misconduct by Quegan. It did not involve needless repetition of inflammatory details. See *Commonwealth* v. *Licata,* 412 Mass. 654, 656-660 (1992); *Commonwealth* v. *Scanlon,* 412 Mass. at 669-670; *Commonwealth* v. *Caracino,* 33 Mass. App. Ct. 787, 791-792 (1993). The judge carefully instructed the jury, both at the time of its admission and again during his charge, as to the limited corroborative purposes of such evidence, see *Commonwealth* v. *Licata,* 412 Mass. at 660, which admonitions the jury are presumed to have understood and followed. *Commonwealth* v. *Pope,* 406 Mass. 581, 588 (1990).

Finally, Quegan's contention that the prosecutor prejudicially smeared his character, by unfair cross-examination re-

---

[11]Quegan's trial counsel either made no specific objection to the evidence now challenged on appeal or attacked it only on the ground of staleness, which he does not argue on appeal. "An issue not fairly raised before the trial judge will not be considered for the first time on appeal[,]" *Commonwealth* v. *Garcia,* 409 Mass. 675, 678-679 (1991); and Quegan's situation does not present "the rare instance of a serious error which creates a substantial risk of a miscarriage of justice." *Id.* at 679.

garding Quegan's role as a parent designed to portray him as despicably neglectful, irresponsible and greedy, is groundless. The judge sustained every objection Quegan's counsel made to such questions. At no time did his counsel move to strike allegedly offensive or inadmissible remarks or seek curative instructions regarding them. The prosecutor properly sought to explore such subjects — by questioning directly responsive to Quegan's testimonial self-description as a loving, doting father whose parental rights were callously undermined by Mrs. Van Horne and her husband — to show Quegan's actual attitude and state of mind during the relevant time period. See *Commonwealth* v. *Trapp*, 396 Mass. 202, 206 (1985). Such evidence was also pertinent to show "the 'entire relationship' between the victim and the defendant." *Commonwealth* v. *Drew*, 397 Mass. 65, 79 (1986), quoting from *Commonwealth* v. *Young*, 382 Mass. 448, 463 (1981). In any event, any prosecutorial transgressions were not egregious, and any resulting error was harmless. Contrast *Commonwealth* v. *Cokonougher*, 32 Mass. App. Ct. 54, 58-61 (1992); *Commonwealth* v. *Martinez*, 34 Mass. App. Ct. 131, 132-133 (1993).

*Judgments affirmed.*