COMMONWEALTH VS. JAMES CIVELLO.

No. 94-P-123.

Berkshire. May 11, 1995. - November 6, 1995.

Present: DREBEN, GREENBERG, & LAURENCE, JJ.

*Evidence*, Cross-examination, Bias. *Witness*, Cross-examination, Bias. *Practice, Criminal*, Witness. *Child Abuse*.

At the trial of an indictment charging indecent assault and battery on a child under fourteen years of age, the judge improperly limited scope of the defendant's cross-examination of the victim with respect to her bias and specifically with respect to her knowledge that her accusations against the defendant, her stepfather, could result in his removal from the home: a new trial was required where credibility was the heart of the defense. [375-379]

INDICTMENT found and returned in the Superior Court Department on August 9, 1989.

The case was tried before *Charles R. Alberti*, J.

*Eric S. Brandt*, Committee for Public Counsel Services, for the defendant.

*Anne M. Kendall*, Assistant District Attorney, for the Commonwealth.

GREENBERG, J. After a jury trial in the Superior Court, the defendant was convicted on an indictment charging indecent assault and battery on a child under fourteen years of age, in violation of G. L. c. 265, § 13B. Two additional charges of forcible rape of the complainant resulted in verdicts of not guilty (see note 1, *infra*). The sole issue on appeal is whether the trial judge erred in denying the defendant the right to cross-examine the complainant about her knowledge that accusations of sexual abuse could result in the defendant's removal from her home. We conclude that the judge improperly limited the scope of the defendant's cross-examination and that the defendant is entitled to a new trial.

The evidence produced at trial relating to the incident of which the defendant was convicted may be summarized as follows. The complainant testified that the incident occurred in early July, 1989, when the complainant was twelve years old and while her mother was at work. While sitting on a chair watching television, the defendant (the husband of the complainant's mother) pulled the complainant to the floor, tried to pull down her pajama pants, and a struggle ensued. The defendant eventually removed the complainant's clothes by tickling her and then proceeded to rub his penis on her, squeeze and suck her breasts, and engage in cunnilingus. Later, she joined her mother and the defendant for pizza and went to bed.[1]

As part of his defense, the defendant sought to establish the complainant's bias through a threefold attack: (1) showing that the complainant resented the attention her mother lavished on the defendant after their marriage; (2) eliciting testimony that the complainant was upset about the restrictions the defendant imposed on her freedom; and (3) demonstrating that the complainant had threatened to report the defendant to the Department of Social Services (DSS) for "abuse" in an effort to remove him from her home.

---

[1] The complainant testified as to two additional sexual attacks by the defendant. As indicated, the defendant was acquitted of the charges stemming from those allegations. According to the complainant, a few weeks after the incident described in the text, a second incident occurred involving intercourse and ejaculation.

On August 1, a few days after the second incident, the complainant testified that she was in her bedroom asleep but awoke to find that the defendant had his fingers in her vagina. On the following day, the complainant's mother took her to the hospital after learning of the alleged attacks.

Fresh complaint testimony as well as the doctor's report differed as to whether the defendant had engaged in sexual intercourse with the complainant during the August 1 incident. In addition, clothes worn by the complainant during the alleged attacks and a sheet tested negative for the presence of semen. These discrepancies may have led the jury to acquit the defendant of the rape charges. The jury were not given the option of finding lesser-included offenses of indecent assault and battery with respect to the incidents that led to the indictments for rape.

Much of this bias theme was presented to the jury. The complainant's mother testified on behalf of the defendant about the difficulties wrought by the defendant's attempts to discipline the complainant. In addition, the complainant acknowledged that, about two months after she returned to the household from a foster home, she threatened to report the defendant to the DSS for "abuse" if she did not "get [her] way." Although the complainant testified that her threat did not refer to "[s]exual abuse," her mother testified otherwise. Specifically, the complainant's mother related to the jury that two months after the complainant returned home she made threats to report the defendant for indecent conduct.

The defendant contends that he was deprived of the opportunity to show the complainant's motive to lie through cross-examination of the complainant when the judge sustained a series of objections to a particular line of questions that was designed to show the complainant knew that her accusations against the defendant could result in his removal from her home:

> DEFENSE COUNSEL: "[D]o you know what happens to people if you report them for sexual abuse?"
>
> COMPLAINANT: "No."
>
> PROSECUTOR: "I object."
>
> JUDGE: "Sustained."
>
> DEFENSE COUNSEL: "Do you know or did you know in July of 1989 if you reported [the defendant] for abusing you he could be taken out of the house?"
>
> PROSECUTOR: "I object."
>
> JUDGE: "Sustained. The jury will disregard that. There is no evidence. This is a child, and the child is not familiar with the legal system. . . . [T]his is totally inadmissible."

At a sidebar conference, defense counsel made an offer of proof to show that the complainant was familiar with the legal system in that she had in the past accused others of sexual abuse, thereby invoking the DSS reporting system and the legal system.[2] In denying the entire line of questions, the judge stated, "This is not her area; what may be a standard procedure under the system one day may not be another day. So I would suggest it's totally collateral, inadmissible." Following this exchange, defense counsel rephrased the question somewhat: "Did you have any prior knowledge about how the criminal justice system works or [how] the DSS works that led you to offer to complain or report [the defendant] for abusing you?" The prosecutor's objection was again sustained, and defense counsel moved on to another topic.

It is well settled that reasonable cross-examination with respect to bias is not discretionary, but is a matter of right reaching constitutional dimensions. See, e.g., *Commonwealth* v. *Graziano*, 368 Mass. 325, 330 (1975); *Commonwealth* v. *Ahearn*, 370 Mass. 283, 286 (1970); *Commonwealth* v. *Cheek*, 374 Mass. 613, 615 (1978). " 'A judge may not restrict cross-examination of a material witness by foreclosing inquiry into a subject that could show bias or prejudice on the part of the witness. . . . While a trial judge has discretion in this matter, he or she has no discretion to prohibit all inquiry into the subject.' If, on the facts, there is a possibility of bias, even a remote one, the judge has no discretion to bar all inquiry into the subject." *Commonwealth* v. *Bui*, 419 Mass. 392, 400-401 (1995) (citations omitted). See also *Commonwealth* v. *Elliot*, 393 Mass. 824, 828 (1985); Liacos, Massachusetts Evidence § 6.8.1 (6th ed. 1994). In this case,

---

[2]Defense counsel stated, in the offer of proof, "that this witness is not unfamiliar with the legal system, particularly the criminal justice system, that she has previously complained of rape and abuse by a man . . . who was the mother's second husband, and he was convicted of rape and abuse of a child in the Berkshire Superior Court, I believe in 1986. And also that on the day that she returned to this house, on August 7, 1988, it was a result of already having reported a young man . . . for having sexually abused her. And [he] was a child in a foster home. He was a foster sibling. I think that she is well aware of the criminal justice system, and I think it is admissible."

we conclude that the judge abused his discretion by restricting "all inquiry" of the complainant on an issue that showed her possible bias and that the defendant was prejudiced as a result. Contrast *Commonwealth* v. *Quegan*, 35 Mass. App. Ct. 129, 134 (1993).

The central defense theory focused on the complainant's credibility, particularly her bias against the defendant. Compare *Commonwealth* v. *Bohannon*, 376 Mass. 90, 94 (1978), *S.C.*, 385 Mass. 733 (1982). While the defendant was permitted to introduce evidence concerning the complainant's dislike of the defendant and her previous threat to report the defendant for abuse, the trial judge foreclosed the opportunity to establish the complainant's knowledge of the legal system. This evidence was material to the defense: proof of the complainant's familiarity with the legal system (and DSS's reporting system) was a necessary prerequisite to the defense that she used the system to remove the defendant from her home. See *Commonwealth* v. *Nichols*, 37 Mass. App. Ct. 332, 337-338 (1994) (defendant had right to present evidence that complainant "was a wilful adolescent prepared to manipulate those who had custody of her and controlled her activities"). Contrast *Commonwealth* v. *Quegan*, 35 Mass. App. Ct. at 132 (no abuse of discretion in excluding evidence of bias of fresh complaint witness because witness's credibility was not a critical issue at trial), and cases cited; *Commonwealth* v. *Herrick*, *ante* 291, 294-295 (1995) (no abuse of discretion where judge refused cross-examination of victim as to her relationship with boyfriend, proffered in support of defense theory that victim concocted rape accusation against defendant because she feared mother would learn, upon physical examination, that she had been intimate with boyfriend).

We recognize that the right to cross-examine to show bias or prejudice is not abridged by the placement of reasonable limitations, as for example where the matter has been sufficiently explored. See *Commonwealth* v. *Doherty*, 394 Mass. 341, 349-350 (1985); *Commonwealth* v. *Porter*, 384 Mass. 647, 658 (1981); *Commonwealth* v. *Bui*, 419 Mass. at 134

("A judge does have discretion to limit cross-examination concerning possible bias when further questioning would be redundant"). However, we do not find that the excluded testimony was cumulative of other evidence. While, at one point in her cross-examination, the complainant responded negatively when asked by defense counsel whether she knew what the repercussions of such a complaint might be,[3] the judge's unequivocal ruling foreclosed any further opportunity for defense counsel to develop this theory and may have suggested to the jury that the matter was not an appropriate one for their consideration. Compare *Commonwealth* v. *Graziano*, 368 Mass. at 330 (defendant not required to pursue line of questioning where judge unequivocally renders an adverse ruling). The precluded testimony was not "sufficiently aired" by other evidence of the complainant's bias in general. *Commonwealth* v. *LaVelle*, 414 Mass. 146, 154 (1993), quoting from *Commonwealth* v. *Hicks*, 377 Mass. 1, 8 (1979).

Moreover, the excluded testimony went to the heart of the defense. Contrast *Commonwealth* v. *Cheek*, 374 Mass. at 615; *Commonwealth* v. *Quegan*, 35 Mass. App. Ct. at 133 (no logical nexus for relevance of excluded evidence). Thus, it is impossible to discern the effect the excluded testimony would have had on the jury. *Commonwealth* v. *Elliot*, 393 Mass. at 831. Its exclusion compels the inference that the defendant was inhibited from forthrightly presenting his defense. *Id.* at 832. Where, as here, "evidence concerning a critical issue is excluded and when that evidence might have had a significant impact on the result of the trial, the right to present a full defense has been denied." *Commonwealth* v. *Bohannon*, 376 Mass. at 94. *Commonwealth* v. *Cogswell*, 31 Mass. App. Ct. 691, 698 (1991).

---

[3]The prosecutor registered a late objection to that question, which the judge sustained, but the prosecutor never moved to strike the answer. (See the excerpts from the transcript accompanying note 2, *supra.*) As the defendant conceded at oral argument, in the absence of such a motion, the objection is waived and the answer was before the jury. See *Commonwealth* v. *Prince*, 4 Mass. App. Ct. 799 (1976); *Commonwealth* v. *Wood*, 17 Mass. App. Ct. 304, 307 (1983).

Additionally, the proposed questions did not seek to elicit a response concerning the complainant's prior sexual history, thereby implicating the "rape shield" statute, G. L. c. 233, § 21B. *Commonwealth* v. *Bohannon*, 376 Mass. at 95. Compare *Commonwealth* v. *Pyne*, 35 Mass. App. Ct. 36, 38 (1993) (where other evidence of bias is available, evidence concerning complainant's sexual history should not be admitted).[4]

*Judgment reversed.*
*Verdict set aside.*

---

[4]We do not speculate whether attempts to introduce further evidence of the complainant's accusations of sexual abuse on the part of others (along the lines of defense counsel's offer of proof, for example — see note 2, *supra*) would run up against the rape shield statute.