COMMONWEALTH *vs.* CHRISTOPHER TWEEDY.

No. 99-P-789.

Middlesex. November 10, 2000. - February 27, 2002.

Present: ARMSTRONG, C.J., PERRETTA, & BECK, JJ.

*Rape. Child Abuse. Indecent Assault and Battery. Evidence,* Bias. *Witness,* Bias.

The exclusion by a judge at a criminal trial of a defense witness's verbatim accounts of the victim's statements, offered by the defendant to show the victim's bias against him, was not error, where the judge did not preclude all inquiry on the issue of bias, but merely restricted the exact wording of the victim's allegedly "foul" and "abusive" language [59-60]; further, the exclusion of an alleged statement made by the victim taunting the defendant was not error, where the alleged taunt was never brought to the attention of the judge, and where, even if the exclusion of the statement constituted error, the defendant was not harmed, because the evidence of the victim's bias was shown in other evidence and, therefore, the absence of the excluded evidence was not significantly prejudicial [60-62].

At a criminal trial, the judge's refusal to allow the defendant to cross-examine the victim's mother on a specific point did not infringe on the defendant's ability to elicit evidence of the mother's bias and the effect it had on the victim, where, even assuming the ruling was erroneous, the error was harmless, because there was ample evidence of the mother's negative feelings toward the defendant and his family. [62-63]

INDICTMENTS found and returned in the Superior Court Department on September 28, 1995.

The cases were tried before *Robert W. Banks*, J.

*Carlo A. Obligato*, Committee for Public Counsel Services, for the defendant.

*Kevin J. Curtin*, Assistant District Attorney (*Kevin L. Ryle*, Assistant District Attorney, with him) for the Commonwealth.

PERRETTA, J. On appeal from his convictions on indictments charging him with two counts of rape and abuse of a child under sixteen years of age and five counts of indecent assault and battery on a child under fourteen years of age, the defendant

argues that the judge erroneously excluded several statements of the victim which he claims demonstrated her bias against him and his family. The judge excluded verbatim accounts of the victim's statements, most of which included very vulgar language, on the basis that there was more than sufficient evidence of the hostility between the victim's family and the defendant's family. Concluding that the judge did not abuse his discretion or commit other error of law, we affirm the convictions.

1. *The evidence.* We briefly summarize the testimony of the victim, Karen.[1] Karen was about five years of age when the defendant began staying through the night with her mother at her apartment. The first incident of abuse occurred when Karen slipped into bed with her mother and the defendant, and the defendant reached beneath Karen's pajamas and fondled her chest and buttocks. Over the next six years, the abuse continued and intensified in nature. We need not detail the acts. It is enough to state that Karen's testimony concerning the defendant's sexual abuse of her was sufficient to put each of the indictments against him to the jury.

At some point during their relationship, Karen's mother became pregnant by the defendant, and they married. However, the defendant continued to abuse Karen sexually until she was a little over eleven years old. Karen related that throughout this six-year period of abuse by the defendant, she once told her mother that the defendant had been "touching" her, but her mother chose not to believe her. When Karen later told her mother of the defendant's acts, the mother confronted him. He denied the allegation, and the mother did nothing more.

In 1994, Karen disclosed the defendant's abuse of her to a therapist, a clinical social worker, who, in turn, filed a mandatory child-abuse report with the Department of Social Services. About a week later, Karen was placed in a foster home where

---

[1]Karen, a pseudonym, was born on December 28, 1981, and was almost sixteen years of age at the time of the instant trial. The defendant's first trial, in 1996, ended in a mistrial due to the jury's inability to reach a verdict.

she remained for about two months. Thereafter, she lived with her maternal grandmother.[2]

In the months following her disclosure to the therapist, Karen was interviewed by people from the District Attorney's office, the Concord District Court, and a children's protective agency. In the meantime, Karen did not see the defendant from the time of her placement with her grandmother until the time of the defendant's first trial.

Karen's mother testified that Karen's relationship with the defendant was "mixed," that is, "[t]hey either loved each other or hated each other," and that when she married the defendant, Karen seemed "upset."[3]

2. *The statements in issue.* During her testimony, Karen stated that she loved the defendant and always would, that "he was just like my dad, to me" but that "in some ways," she "hate[d]" him. She acknowledged that she currently wanted "[t]o put him in jail" and stated that he "deserve[d]" to be incarcerated. However, Karen denied that she had told the defendant's mother (Mrs. Tweedy) that she and her (Karen's) family would "grind the Tweedy family into the ground." When the judge sustained objections to the defendant's questions concerning whether Karen had ever sworn at Mrs. Tweedy and whether Karen had ever told Mrs. Tweedy that she would never see her grandchildren again, the defendant attempted to make an offer of proof. The judge stood firm in his ruling and told defense counsel that the offer of proof could be made "at another time."[4]

During questioning of Mrs. Tweedy, defense counsel brought out the fact that she (Mrs. Tweedy) had received numerous

---

[2]Soon after the Department of Social Services became involved with Karen, the defendant told a friend that her removal from the home was due to the fact that one night she slipped into bed with him and her mother and that he mistook her (Karen) for her mother.

[3]During her testimony, Karen's mother made a vituperative outburst against the defendant.

[4]Appropriate offers of proof should be allowed at the time of the request "unless the judge is sure of the cross-examiner's purpose and satisfied that it is apparent from the record . . . ." *Commonwealth* v. *Barnett*, 371 Mass. 87, 95 (1976), and authorities therein cited. Even if we were to assume that it was error for the judge to deny the offer, we would find no need to reverse the defendant's convictions. Mrs. Tweedy testified to Karen's use of foul language during their telephone conversations.

telephone calls from Karen. When he attempted to elicit the substance of these conversations, the judge conducted a sidebar conference concerning the nature of the conversations. Defense counsel represented that he intended to show that Karen would telephone Mrs. Tweedy, speak to her in abusive terms, and tell her that her (Karen's) family intended to "grind the Tweedy family into the ground." He argued that the conversations were admissible to show that the relationship between Karen's family and the defendant's family had become so polarized as to have an impact on Karen's testimony. The judge ruled that the "position[s] of the families [were] pretty-well defined" and excluded any testimony by Mrs. Tweedy concerning the actual substance of the conversations on the basis that a verbatim recitation of the conversations was of "minimal evidentiary value." As an offer of proof of the substance of the conversations, defense counsel had marked for identification Mrs. Tweedy's handwritten journal, with entries dated from November, 1995, through August, 1997, in which she described her conversations with Karen.

Staying within the limits of the judge's ruling, defense counsel elicited from Mrs. Tweedy the facts that although she had not seen Karen after December, 1994, she had received numerous telephone calls from her, that during all these conversations, Karen had been "abusive," that she had used "[v]ery bad language," and that the nature of Karen's statements made it "hard" for her to believe that Karen was the "little girl I loved so much."

3. *Restriction of evidence as to bias.* It is the defendant's argument that the judge erroneously deprived him of an evidentiary basis upon which to argue that Karen's testimonial "expressions of love and magnanimity [for and toward the defendant] were disingenuous." The defendant claims that he was denied the right to show that Karen had a bias against him.

Although a defendant has a right to show the bias of an adverse witness, that right is not without some limitation. As stated in *Commonwealth* v. *Hicks*, 377 Mass. 1, 8 (1979): "Reasonable cross-examination of a witness to show bias or prejudice has long been matter of right. *Commonwealth* v. *Russ*, 232 Mass. 58, 79 (1919). *Commonwealth* v. *Graziano*, 368

Mass. 325, 330 (1975). But the right is not necessarily infringed by curbing inquiry where the matters sought to be elicited have been sufficiently aired. *Commonwealth* v. *Walker*, 370 Mass. 548, 572, cert. denied, 429 U.S. 943 (1976)." See *Commonwealth* v. *Smiledge*, 419 Mass. 156, 159 (1994).

We see no error in the judge's ruling. In the first instance, he did not preclude *all* inquiry on the issue of bias against the defendant on the part of Karen and her family. Compare *Commonwealth* v. *Civello*, 39 Mass. App. Ct. 373, 376-377 (1995). Rather, and as earlier noted, the judge limited the testimony of Mrs. Tweedy to the abusive nature of her conversations with Karen while restricting her from any verbatim recitation of their substance. The limitation was based upon the articulated reason that the positions of the victim and her family and that of the defendant and his family had been "pretty-well defined."

We think the judge's ruling was within the broad range of his discretion. Our conclusion is based upon the facts that Karen and her mother demonstrated feelings of extreme animosity toward the defendant and his family throughout their testimony and that all of the statements in issue allegedly made by Karen were made *after* the defendant had been indicted. In short, and as we read the defendant's offer of proof (Mrs. Tweedy's notes concerning Karen's statements to her), the judge reasonably excluded only the exact wording of Karen's allegedly "foul" and "abusive" language.[5] See *Commonwealth* v. *Porter*, 384 Mass. 647, 658 (1981). We see nothing in this ruling which was per se erroneous or which otherwise so prejudiced the defendant as to require reversal of his convictions.[6]

There is yet another statement contained in the offer of proof

[5]At oral argument, the defendant seemed to suggest that Mrs. Tweedy's notes were admissible to show that Karen had made a prior inconsistent statement, that is, that she did tell Mrs. Tweedy that her (Karen's) family would "grind" the Tweedy family into the ground. Even were we to consider this claim, see Mass.R.A.P. 16(a)(4), as amended, 367 Mass. 921 (1975), our conclusion would be no different. See *Commonwealth* v. *Sherry*, 386 Mass. 682, 693 (1982) ("victim's testimony on matters not relevant to contested issues in the case cannot, as of right, be contradicted by extrinsic evidence").

[6]To the extent that the defendant argues on appeal that the judge's ruling deprived him of the right to highlight or otherwise stress the inconsistency or contrast between Karen's demeanor during her testimony and her abusive language during her telephone conversations with Mrs. Tweedy, we note that

that the defendant claims he should have been allowed to elicit from Mrs. Tweedy. According to Mrs. Tweedy's notes, Karen taunted the defendant in November, 1996, during the first trial, stating, "Ha, ha, you're going to prison for a long long time you god damned asshole."[7] There is nothing in the record before us to show that the "exclusion" of Mrs. Tweedy's verbatim account of Karen's allegedly foul language was error, let alone prejudicial error.

In the first instance, Karen's alleged taunt of the defendant was never brought to the attention of the judge. Defense counsel never asked Karen or Mrs. Tweedy about this particular statement during his questioning of either witness. Although we do not suggest that defense counsel was required to put the question to Karen before he could offer extrinsic evidence of her bias through examination of Mrs. Tweedy, see *Commonwealth* v. *Brown*, 394 Mass. 394, 397 (1985); *Commonwealth* v. *Gabbidon*, 17 Mass. App. Ct. 525, 531 (1984), we do think he was required to make specific reference to this particular alleged display of bias in light of the judge's express statement as to his lack of knowledge of the contents of the four-page offer of proof. Further, there is nothing in the record before us, including the offer of proof, to show how Mrs. Tweedy's recounting of the statement would be other than inadmissible hearsay, that is, there is nothing in the record before us to show how Mrs. Tweedy knew of Karen's supposed taunting statement to the defendant. Consequently, we have no cause for reversing the defendant's convictions on the basis of this claim. See *Com-*

the judge's ruling did not prevent him from so doing. Although free to rely upon Mrs. Tweedy's testimony and point out Karen's alleged "dual persona" during his closing argument, defense counsel chose not to do so. Instead, he argued that Karen, angry with her mother because of her abdication of her parenting responsibilities in favor of her substance abuse and overwhelmed by the consequent burdens placed upon her (Karen), decided to strike out at her mother by fabricating the accusations against the defendant. Defense counsel argued that as the matter escalated, Karen became too embarrassed to retract her allegations.

[7]Although the notes were dated in the chronological order in which Karen allegedly made the statements therein recounted, this particular entry, the November, 1996, taunt, is strangely interposed between entries dated August, 1997, and "[l]ater in August, 1997," both of which described the substance of telephone calls from Karen to Mrs. Tweedy.

*monwealth* v. *McCann*, 325 Mass. 510, 513 (1950); *Commonwealth* v. *Hubbard*, 371 Mass. 160, 174 (1976).

Even were we to conclude that an appropriate offer of proof had been made, we would also conclude that any erroneous exclusion of Mrs. Tweedy's testimony concerning Karen's taunting statement to the defendant does not require reversal of the defendant's convictions. As earlier noted, the "fact of [Karen's] bias was shown in other evidence and, therefore, the absence of the excluded evidence was not significantly prejudicial."[8] *Commonwealth* v. *Grenier*, 415 Mass. 680, 686 (1993), citing *Commonwealth* v. *LaVelle*, 414 Mass. 146, 154-155 (1993).

The defendant's final claim of error concerns the judge's refusal to allow him to cross-examine Karen's mother as to whether she had ever prevented the Tweedy family from seeing their grandchildren. He claims that the judge's ruling infringed upon his right to "elicit evidence of [the mother's] bias and the poisonous effect that it had on [Karen]."

Even assuming that the ruling was erroneous, we conclude that any error was harmless. Although the mother denied any feeling of bitterness toward the defendant and his family, there was ample evidence before the jury to show otherwise. As acknowledged by the defendant in his brief, Karen's mother made it clear to the jury that she "hated" the defendant.[9] Additionally, Mrs. Tweedy testified that her relationship with Karen and Karen's mother had deteriorated to the point that Karen's mother would not let the Tweedy family see their grandchildren. Any error in the judge's ruling on this score does not require reversal. See *Commonwealth* v. *White*, 32 Mass. App. Ct. 949, 949 (1992) ("Apart from the natural inference that a mother would feel hostility toward one who had raped her daughter . . . the jury could have been in no doubt as to the mother's bias against the defendant"); *Commonwealth* v. *Quegan*, 35 Mass. App. Ct. 129, 134-135 (1993) (jury "had to have been

---

[8]As earlier noted, Karen testified that she wanted "[t]o put [the defendant] in jail" and stated that he "deserve[d]" to be incarcerated.

[9]It is therein stated: "As is clear from her testimony, [Karen's mother] hated the defendant and she unabashedly vented these feelings at trial where she was, at times, nearly uncontrollable as a witness. Following several objections to her testimony by defense counsel, the judge stopped the trial to order the prosecutor to restrain her."

acutely aware of [the witness's] animosity toward the man"
who, she believed, had molested her granddaughter).

*Judgments affirmed.*