COMMONWEALTH *vs.* RALPH CARTY, JR.

Norfolk.  November 8, 1979. — December 12, 1979.

Present: HALE, C.J., GOODMAN, & GRANT, JJ.

*Witness,* Cross-examination, Impeachment. *Evidence,* Juvenile delinquency records, Impeachment of witness, Relevancy and materiality. *Constitutional Law,* Confrontation of witnesses. *Practice, Criminal,* Comment by counsel, Failure to call witness.

At the trial of a defendant charged with kidnapping and forcible rape of a child, the judge erred in excluding evidence of the juvenile victim's probationary status at the time she made a fresh complaint. [794-795]

INDICTMENTS found and returned in the Superior Court on February 6, 1978.

The cases were tried before *Irwin,* J.

*John F. Palmer* for the defendant.

*Charles J. Hely,* Assistant District Attorney, for the Commonwealth.

HALE, C.J. This is an appeal from the defendant's conviction on jury verdicts for the kidnapping (G. L. c. 265, § 26), and for the forcible rape of a child (G. L. c. 265, § 22A, as amended by St. 1974, c. 474, § 2).

The jury could have found the following facts. The victim, then fourteen years old, was hitchhiking with her boyfriend at about 11:00 P.M. on February 1, 1978, when they were picked up by the defendant, whom they had

never seen before. After a fifteen-minute stop at the
home of the boyfriend's aunt the three drove around for
some time, made at least two more stops, smoked a
marihuana cigarette and discussed stealing a truck.
They planned to find a truck and drop the boyfriend off
to "hot wire" it while the defendant and the victim drove
once around the block. They located a truck, and the
boyfriend was let off. But the defendant, instead of circl-
ing the block, drove to a dirt road where he raped the vic-
tim.

The defendant then drove the victim to the home of an
acquaintance of hers and left her there at about 4:30 A.M.
She waited in an entryway for about two hours until she
heard someone moving about in the house. There was no
telephone in the house, and no one there attempted to
notify the police of the incident. The victim's mother
called the police when her daughter did not come home
and suggested that they look for her at the acquaint-
ance's house. The police did so, arriving at the house
about 11:00 the following morning. The victim told
them that she had been raped and of the events leading
up to the rape.

The defendant asserts that the trial judge erred in
three respects: (1) by refusing to permit the defendant's
inquiry into the victim's juvenile record and into her
mother's attitude concerning the victim's boyfriend and
the victim's perception of that attitude; (2) by forbidding
comment on the Commonwealth's failure to call the boy-
friend as a witness and by inaccurately instructing the
jury on that matter, and (3) by interrupting the defend-
ant's direct examination of the victim's mother and
eliciting hearsay testimony from her.

1. In the course of his cross-examination of the victim
the defendant sought to introduce parts of her record as
a juvenile offender to show her probationary status at
the time she made a fresh complaint as well as at the
time of trial. When this approach was denied him, the
defendant made an offer of proof in the form of certified
copies of three juvenile complaints, on each of which all

of the proceedings before the Juvenile Court are noted and the court's actions thereon are stated. The complaints were marked for identification, and we have them before us.

The basic question before us, as it was before the trial judge, is whether the victim's probationary status was such as to permit the jury to infer that she was motivated to fabricate a rape in order to disguise the true nature of her activities on the night she met the defendant. Two of these complaints show that she was adjudged delinquent on January 17, 1978, and was placed on probation until January 16, 1979. Thereafter she was before the court on several occasions for hearings on whether she had violated the terms of her probation. At the time of the present trial, October 16-24, 1978, final hearings on the violation question were pending, having been continued from September 8 to October 27, 1978. We note that the docket of this case indicates that she was in the custody of the Division of Youth Services at the time of trial. We conclude on the basis of the reasoning of *Commonwealth* v. *Ferrara*, 368 Mass. 182, 183-190 (1975), that the defendant was denied his constitutional right of confrontation, and that the "State's policy interest in protecting the confidentiality of a juvenile offender's record cannot require yielding of so vital a constitutional right as the effective cross-examination for bias of an adverse witness." *Id.* at 190, quoting from *Davis* v. *Alaska*, 415 U.S. 308, 320 (1974). Contrast *Commonwealth* v. *Santos*, 376 Mass. 920 (1978). Compare *Commonwealth* v. *Hogan*, 7 Mass. App. Ct. 236, 242 (1979); *S.C.* 379 Mass. 190 (1979).

The judge did not bar the defendant from exploring as a possible motive for fabrication the victim's concern about her mother's reaction to her being out all night when she was supposed to be home no later than 11:30 P.M. The questions which were excluded by the judge were irrelevant, and there was no error in excluding them.

2. The judge's restriction of the defendant's argument on the failure of the Commonwealth to call the boyfriend as a witness and his statement to the jury on that point were proper. See *Commonwealth* v. *Happnie,* 3 Mass. App. Ct. 193, 195-198 (1975).

3. As the remaining question raised by the defendant concerns a matter which is unlikely to arise at retrial, we do not discuss it.

> *Judgments reversed.*
>
> *Verdicts set aside.*