## COMMONWEALTH vs. ROBERT G. ELLIOT.

Worcester. November 7, 1984. — February 4, 1985.

Present: HENNESSEY, C.J., WILKINS, LIACOS, ABRAMS, & LYNCH, JJ.

*Rape. Evidence,* Cross-examination, Other offense. *Conflict of Interest. Witness,* Impeachment.

At a rape trial it was reversible error for the judge, during cross-examination of the complaining witness, to exclude defense counsel's questions intended to impeach her credibility by showing that she had financial motives for seeking the defendant's conviction, where it could not be said that, had this testimony been admitted, it would have been without material effect on the jury. [826-832] LYNCH, J., concurring.

Where an attorney who had been retained to represent the defendant in a rape case withdrew from the case in a timely manner before the probable cause hearing had occurred, the attorney's representation of the complaining witness in a civil action commenced after the defendant's conviction of rape and based on the same facts gave rise to no inference of a conflict of interest. [832]

Discussion of the appropriateness of a trial judge's admitting evidence of a criminal defendant's prior convictions for the purpose of impeaching his testimony, in circumstances where such evidence creates a danger of unfairness. [832-834] LYNCH, J., stated his views in a separate opinion.

INDICTMENTS found and returned in the Superior Court Department on November 5, 1980.

The cases were tried before *James P. Donohue, Jr.,* J., and a motion for a new trial was heard by him.

The Supreme Judicial Court granted a request for direct appellate review.

*Brownlow M. Speer (Thomas J. Herbert* with him) for the defendant.

*Bradford S. Mauro,* Assistant District Attorney, for the Commonwealth.

HENNESSEY, C.J. The defendant was convicted by a jury in the Superior Court of rape and of breaking and entering a

dwelling house in the nighttime with intent to commit a felony. He was sentenced to terms of eight to twelve years at the Massachusetts Correctional Institution at Walpole, to be served concurrently with each other and with any sentence then being served. We granted the defendant's application for direct appellate review of his convictions and of the denial of his motion for a new trial. The defendant alleges that he is entitled to a new trial on four grounds: (1) error by the trial judge in excluding questions on cross-examination designed to impeach the credibility of the rape complainant; (2) newly discovered evidence consisting of the complainant's subsequent civil claim against the defendant's employer based upon the assault; (3) conflict of interest on the part of the defendant's originally retained attorney due to his representation of the complainant in her subsequent civil action; and (4) abuse of discretion by the trial judge in allowing the prosecutor to introduce evidence of the defendant's prior rape conviction for impeachment purposes. We agree that the judge erred in excluding questions intended to show the complainant's bias and conclude that the defendant is entitled to a new trial.

In August, 1980, the defendant was on parole from a rape conviction and was employed as a maintenance man by the Washington Heights apartment complex. In the afternoon of August 25, 1980, he did some painting and repair work in the complainant's apartment, which was located on the ground floor of the complex. She testified that nothing unusual happened on this occasion; he claimed that she seduced him and that they had sexual intercourse. The complainant stated that in the early morning hours of August 28, 1980, she was awakened by the sound of a door opening and that the defendant then entered her apartment and raped her.[1] The defendant testified that the complainant had invited him to her apartment and that the two had consensual sexual intercourse. After the

---

[1] By virtue of his employment, the defendant had master keys to all the apartments. The complainant's testimony at trial, that the defendant entered her apartment through the locked front door, differed from her original statement to police that he had entered through a sliding glass door she had left open.

defendant left her apartment, the complainant drove to the home of her male friend, Grindal Gardner, who called the police. The defendant was arrested in his apartment later that morning.

The defendant's wife originally retained Attorney Conrad Fisher to represent her husband. Mr. Fisher met once with the defendant at the Worcester County house of correction to discuss the case. However, he withdrew his representation prior to the defendant's probable cause hearing upon discovering that Gardner would be testifying as a witness under the fresh complaint doctrine. Mr. Fisher knew Gardner, a real estate broker, quite well and had previously represented him and other members of his family in various legal matters.

The defendant's trial ended with the return of the jury's verdicts on Thursday, April 2, 1981. On Monday, April 6, the complainant (accompanied by Gardner) met with Mr. Fisher and discussed the feasibility of filing suit against Washington Heights for negligence in hiring the defendant. On October 14, 1981, Washington Heights received a claim letter from Mr. Fisher demanding compensation for the complainant. The defendant filed a motion for a new trial on October 20, 1982, citing the first three grounds discussed above. An evidentiary hearing was held solely on the issue of Mr. Fisher's alleged conflict of interest and on March 21, 1983, the defendant's motion was denied on all grounds.

1. At trial the defendant sought to impeach the complainant's credibility by probing into possible financial motives for securing his conviction. Specifically, he inquired into the complainant's financial difficulties with Washington Heights and asked whether she had instituted a court suit against the apartment complex.[2] The judge excluded this line of questioning as

---

[2] The questions asked by defense counsel on cross-examination of the complainant and the rulings made by the judge were as follows:

DEFENSE COUNSEL: "Now you were, during the period of August, 1980, being evicted by the Washington Heights apartment."
THE WITNESS: "Yes."
THE PROSECUTOR: "I object."
THE JUDGE: "Excluded."

impermissibly "discrediting [the complainant] by showing bad character" and refused the defendant's offer of proof as to the purpose of the cross-examination and the testimony he sought to elicit. In an affidavit submitted with the defendant's motion for a new trial, the defendant's trial attorney stated what he had intended to present as his offer of proof: "I wished to elicit from the witness whether she had a personal financial interest or stake in the outcome of this case, specifically whether she had commenced suit or made a financial claim against The Washington Heights Apartment Complex, the employer of the defendant, on the basis of the alleged incident involved in this case; or whether she had taken any steps to prepare for the commencement of such a suit or to make such a claim; or

DEFENSE COUNSEL: "Did you receive any notice of a law suit commenced by the Washington Square apartment complex?"

THE PROSECUTOR: "I object."

THE JUDGE: "Excluded."

DEFENSE COUNSEL: "Note my objection."

THE JUDGE: "Yes. Next question."

DEFENSE COUNSEL: "May I approach the side bar?"

THE JUDGE: "No. Your objection is noted. Next question."

DEFENSE COUNSEL: "Were you aware of any charges being brought by Washington Heights Complex concerning an automobile accident in which you were the driver?"

THE PROSECUTOR: "I object."

DEFENSE COUNSEL: "In August?"

THE JUDGE: "Excluded."

DEFENSE COUNSEL: "Note my objection."

THE JUDGE: "Yes."

DEFENSE COUNSEL: "Are you now engaged in suing Washington Heights?"

THE PROSECUTOR: "I object."

THE JUDGE: "Excluded. Next question."

DEFENSE COUNSEL: "I would like to approach the side bar."

THE JUDGE: "No. Next question."

DEFENSE COUNSEL: "Note my objection."

THE JUDGE: "Yes."

DEFENSE COUNSEL: "May I make an offer of proof?"

THE JUDGE: "No. Go ahead. We have your offer of proof before."

DEFENSE COUNSEL: "Note my objection."

THE JUDGE: "Yes."

whether she had at the time of trial any intention to commence such a suit or to make such a claim in the future."

During oral argument before this court the Commonwealth conceded that the judge erred in excluding the defendant's questions. We agree. However, we disagree with the Commonwealth's contention that, in light of the complainant's likely response and the information the defendant was otherwise able to present to the jury, such error was harmless.

We are aware of the ordeal rape complainants must undergo in assisting the prosecution of their attackers. The Legislature has shown sensitivity to a complainant's plight. G. L. c. 233, § 21B. At the same time we cannot lose sight of the defendant's right, guaranteed by the Sixth and Fourteenth Amendments to the United States Constitution and by art. 12 of the Commonwealth's Declaration of Rights, to confront adverse witnesses "by means of cross-examination directed toward revealing possible biases, prejudices, or ulterior motives of the witness as they may relate directly to issues or personalities in the case at hand." *Davis* v. *Alaska,* 415 U.S. 308, 316 (1974). *Commonwealth* v. *Joyce,* 382 Mass. 222, 225 (1981). We have stated in the past that "[t]he right to cross-examine a complainant in a rape case to show a false accusation may be the last refuge of an innocent defendant." *Joyce, supra* at 229. See *Commonwealth* v. *Bohannon,* 376 Mass. 90, 94 (1978) (where evidence concerning credibility of rape complainant was excluded, the "right to present a full defense" was denied); *Commonwealth* v. *Carty,* 8 Mass. App. Ct. 793, 795 (1979) (exclusion of inquiry into rape complainant's probationary status denied defendant his constitutional right of confrontation).

The institution of a civil suit based upon a criminal offense, while entirely legitimate, can create financial motive for the victim to falsify testimony in order to secure a criminal conviction. Therefore, we have recognized the defendant's right to probe into such matters to reveal a witness's bias and personal interest. See *Commonwealth* v. *Marcellino,* 271 Mass. 325, 327 (1930) (exclusion of question regarding assault victim's civil suit against defendant constituted reversible error); *Commonwealth* v. *Dutra,* 15 Mass. App. Ct. 542, 549 (1983)

("[E]vidence of the civil suit was unquestionably relevant to the issue of the [rape] victim's credibility, inasmuch as it indicated that a guilty verdict in the criminal case might aid her recovery in the civil matter").

The Commonwealth claims that in this case the judge's error was harmless because, had the complainant answered the excluded questions, her testimony would not have had a material effect on the jury. Based upon testimony given at the hearing on the defendant's motion for a new trial, the judge found that "she [the complainant] never considered the possibility of a civil action until Gardner mentioned it to her after the trial was over." Therefore, he concluded, "evidence of the claim or the intention to pursue a claim could not have been uncovered at trial." There are several problems with such reasoning. According to the transcript of the new trial hearing, the complainant did not testify in the manner attributed to her.[3] She did state that she did not meet with Mr. Fisher to discuss bringing a civil claim until after the defendant's conviction. However, she also testified that she had discussed the idea of recovering compensation for the assault with her family and friends without indicating when such discussion took place,[4]

---

[3] It was Gardner who stated that the first time he suggested that the complainant consider bringing a civil suit was after the conclusion of the defendant's trial. There was no testimony by the complainant as to when *she* first considered the possibility of pursuing a civil claim.

[4] The relevant testimony by the complainant at the hearing on the defendant's motion for a new trial is as follows:

DEFENSE COUNSEL: "[D]id Mr. Gardner tell you about his conversation he had with some police officers in regards to your being entitled to some type of compensation?"

THE WITNESS: "I don't know. I don't know. Did he? I don't know. He could of [*sic*]. I don't know."

DEFENSE COUNSEL: "Well, assuming that he could of [*sic*] and he did, do you have any idea as to about when he did?"

THE WITNESS: "What conversation? I don't understand. What compensation?"

DEFENSE COUNSEL: "Compensation as far as you being the victim of a rape civilly?"

THE WITNESS: "Did I ever talk to my boyfriend about that?"

DEFENSE COUNSEL: "That is right."

THE WITNESS: "I sure did, yeah."

whether before or after the defendant's trial. Based upon this record neither we nor the trial judge can know with certainty how the complainant would have answered the defendant's questions. This is particularly evident in light of the trial attorney's affidavit, which suggests that had he been permitted to proceed, he would have inquired into the complainant's intent to pursue a civil claim. See *Commonwealth* v. *Graziano,* 368 Mass. 325, 330 (1975) (defendant is not required to pursue a line of questioning "in the face of the judge's unequivocal adverse ruling").

This case is distinguishable from *Commonwealth* v. *Haywood,* 377 Mass. 755 (1979). There we upheld the exclusion of a witness's arrest record where the arrests occurred after his initial statements to the police incriminating the defendant. On voir dire the trial judge found no inconsistencies between the witness's pre- and post-arrest statements that would suggest he had falsified testimony to seek government favor. The Commonwealth contends that here too the complainant's testimony at trial predated any incentive that she might later have had to accuse the defendant falsely. However, as we have already indicated, we do not know when the complainant first entertained the idea of bringing a civil suit. Nor are we faced, as was the trial judge in *Haywood,* with having to balance the

---

DEFENSE COUNSEL: "Tell us as best you can —"

THE WITNESS: "I told him what happened to me."

DEFENSE COUNSEL: "Yeah."

THE WITNESS: "Why shouldn't I? It is — I am going out with him for four years. I discussed it with my parents, too. My sister, my father, everybody."

DEFENSE COUNSEL: All right. And —"

THE WITNESS: "No friends, of course. But I mean the ones that are close to me, yeah."

DEFENSE COUNSEL: "And then it was subsequent to the trial that you went to see Mr. Fisher?"

THE WITNESS: "I saw Mr. Fisher after the trial, yes. I never even knew Mr. Fisher."

DEFENSE COUNSEL: "You knew —"

THE WITNESS: "I never knew him."

DEFENSE COUNSEL: "You met Mr. Fisher through Mr. Gardner?"

THE WITNESS: "Yes. He recommended me to him."

defendant's right of cross-examination against a witness's interest in the confidentiality of an arrest record. *Haywood, supra* at 760-763.

We cannot say in this case that "had the judge admitted the testimony erroneously excluded, it would have been without material effect on the jury." *Commonwealth* v. *Caldron,* 383 Mass. 86, 93 (1981). Among other relevant facts, the three-way relationship between Mr. Fisher, Gardner, and the complainant; the inconsistencies in their testimony regarding possible contact between Gardner and Mr. Fisher prior to the latter's withdrawal; and the issues as to when and how the idea of bringing a civil action against Washington Heights arose, all lend support to the defendant's contention that, had he been allowed to pursue his cross-examination, he could have shown some financial motive on the part of the complainant to secure his conviction. Therefore, we do not regard the judge's error as harmless.

Alternatively, the Commonwealth argues that the judge's error was harmless because the information the defendant unsuccessfully sought to elicit on cross-examination reached the jury through other means. The jury did hear witnesses other than the complainant testify that at the time of the assault the complainant was in financial arrears, she was in the process of being evicted, and her account with the telephone company was delinquent. However, because the defendant was not allowed to question the complainant about these matters or about her claim against Washington Heights, the jury could not "make a discriminating appraisal of the possible biases and motivations" of the complainant. *United States* v. *Tracey,* 675 F.2d 433, 437 (1st Cir. 1982). When we have decided that a trial judge committed no error or only harmless error in striking questions by a defendant designed to impeach a witness's credibility, it has been because the equivalent information was communicated to the jury. See *Commonwealth* v. *Walker,* 370 Mass. 548, 572, cert. denied, 429 U.S. 943 (1976) (no error to exclude questions regarding witness's motive to seek government favor where his plea agreement with prosecution was recounted to the jury); *Murphy* v. *Conway,* 360 Mass. 746, 750 n.3 (1972) (any possible error was harmless because excluded testimony

was cumulative, inasmuch as there was other testimony giving the same information); *Commonwealth* v. *Baker,* 346 Mass. 107, 120 (1963) (no prejudice to defendant where excluded question had in substance been covered by previous question and answer); *Commonwealth* v. *Taylor,* 327 Mass. 641, 648 (1951) (if there was error, it was immediately cured by permitting witness to answer same or similar question). In this case the judge allowed no other testimony by the complainant regarding her intent to recover financial compensation for the assault she had suffered.

Finally, the Commonwealth asserts that defense counsel was able to "forcefully argue" his theory of bias to the jury in his closing argument. We disagree. Our review of the record leads us to the contrary inference that the defense was inhibited, presumably by the judge's exclusion of the bias questions, from forthrightly presenting its theory to the jury. On the other hand, on several occasions the prosecutor rhetorically asked the jury what possible motive could cause the complainant to accuse the defendant falsely of rape. This line of argument clearly implicated the excluded inquiries as to bias and bolsters our conclusion that we are not dealing here with harmless error.

2. We disagree with the defendant's contention that he was prejudiced by an alleged conflict of interest on the part of his original counsel, Mr. Fisher, due to the latter's representation of the complainant in her postconviction civil claim. Because of Mr. Fisher's timely withdrawal from the case prior to the defendant's probable cause hearing, we draw no inferences of conflict of interest. Cf. *Commonwealth* v. *Hurley,* 391 Mass. 76, 77 (1984) (conflict of interest resulted from attorney's representation of both defendant and prosecution witness at time of trial); *Commonwealth* v. *Hodge,* 386 Mass. 165 (1982) (where partner of defendant's attorney represented prosecution witness at time of trial, conflict of interest resulted).

3. Only one of the other issues raised by the defendant — the admission in evidence of a 1964 rape conviction of the defendant — is likely to recur at a new trial. Both prior to and during his trial the defendant moved to bar the Commonwealth from using the conviction to impeach his testimony. The de-

fendant argued that the admission of the prior rape conviction would be highly prejudicial while not probative of his credibility. The defendant's motions were denied and the conviction was admitted in evidence with appropriate limiting instructions by the trial judge. The defendant now contends that the judge's ruling constituted reversible error under *Commonwealth* v. *Maguire,* 392 Mass. 466, 470 (1984).

Initially this court held that G. L. c. 233, § 21, which states that a criminal conviction of a witness "may be shown to affect his credibility," did not grant a trial judge discretion to exclude evidence of a witness's conviction, once offered by the prosecution. *Commonwealth* v. *West,* 357 Mass. 245, 249 (1970). Recognizing the danger of unfair treatment "when evidence is admitted of a defendant's prior conviction of a similar crime, particularly a crime not reflecting previous untruthfulness," we qualified our position in *Commonwealth* v. *Chase,* 372 Mass. 736, 750 (1977). There we noted that "we would not deny the right of a judge to avoid any question of unfairness by excluding such evidence in a situation where the likely prejudice to the defendant is most intense." *Id.* In *Commonwealth* v. *Maguire,* 392 Mass. 466, 470 (1984), we went one step further and granted the defendant the right to appellate review of a judge's discretionary ruling admitting evidence of a prior conviction. While we indicated that appropriate limiting instructions by the judge and proper use of the evidence by the prosecutor are factors to consider in reviewing the judge's ruling, we emphasized in *Maguire* the importance of "substantial similarity of the crimes" in determining whether the "danger of unfair prejudice outweighed the probative value of the evidence." *Id.* at 470-471.

We have not yet had occasion to reverse a conviction due to a judge's abuse of discretion in admitting a prior conviction. In light of our conclusion that the defendant is entitled to a new trial, we need not and do not decide whether the judge erred in this case. We note, however, that the circumstances in which the defendant's prior conviction was admitted in evidence posed the very danger of unfairness which has motivated the progression of our thinking on this issue. "The danger of

prejudice most clearly arises when the prior convictions are similar in nature to the indictments on trial. . . . It is firmly and wisely established in our law that no defendant should be convicted of a crime by proof of his reputation or propensity to commit similar crimes. . . . It is reasonable for us to be confident that in most cases limiting instructions accomplish their intended purpose. Nevertheless, in cases like the instant one, where the evidence subject to limitations has an extremely high potential for unfair prejudice, we have a duty to be skeptical as to the effectiveness of limiting instructions. . . . There is only one appropriate remedy when evidence of a defendant's prior conviction is offered which is highly prejudicial and which has little or no probative value even upon the limited issue for which it is received. That remedy is to exclude it . . . ." *Commonwealth* v. *DiMarzo,* 364 Mass. 669, 680-682 (1974) (Hennessey, J., concurring).

4. Because there was error in the trial judge's exclusion of questions on cross-examination designed to demonstrate bias of the rape complainant, we reverse the judgments, set aside the verdicts, and remand the case for a new trial.

*So ordered.*

LYNCH, J. (concurring). I agree with the court's decision reversing the defendant's convictions because of the exclusion of questions on cross-examination intended to show bias of the rape complainant. I depart, however, from the implication that the judge may have abused his discretion in admitting the defendant's prior rape conviction for impeachment purposes.

In *Commonwealth* v. *Maguire,* 392 Mass. 466 (1984), we ruled that it is appropriate to grant appellate review of a judge's ruling admitting evidence of a criminal defendant's prior conviction. *Id.* at 470. "The question on appeal will normally be whether there was an abuse of discretion in admitting evidence of a prior conviction because the danger of unfair prejudice outweighed the probative value of the evidence of a prior conviction for the purposes of impeachment." *Id.* We con-

cluded that there was no abuse of discretion in *Maguire* because "[t]he judge twice gave appropriate limiting instructions, and the prosecution did not misuse that evidence in its argument to the jury." *Id.*

The majority has now suggested that it might reverse the convictions if upon retrial the judge admits the defendant's prior conviction of rape. I would conclude that no abuse of discretion would exist if, as in the first trial, the judge gives appropriate and strong limiting instructions and ensures that the prosecutor does not misuse the evidence.

Evidence of a prior conviction, especially of a violent crime or one involving dishonesty, is probative as to the defendant's credibility as a witness. See Advisory Committee Note to First Draft of Proposed Fed. R. Evid. 609(a), reprinted in 46 F.R.D. 161, 297 (1969) ("A demonstrated instance of willingness to engage in conduct in disregard of accepted patterns is translatable into willingness to give false testimony"). A reasonable basis exists, therefore, for the legislative determination that evidence that the defendant has been found guilty of a failure to conform his conduct to the legal norms of society should be brought to the jury's attention, as an aid in evaluating the defendant's sincerity and reliability as a witness. The judge's role should generally be limited to preventing misuse of the evidence, through appropriate limiting instructions and careful monitoring of the prosecutor's use of the evidence at trial. Only in extreme circumstances, not shown to be present here, would I conclude that the danger of unfair prejudice *required* the exclusion of such evidence.