NOTICE:  Summary decisions issued by the Appeals Court pursuant to M.A.C. Rule 23.0, as appearing in 97 Mass. App. Ct. 1017 (2020) (formerly known as rule 1:28, as amended by 73 Mass. App. Ct. 1001 [2009]), are primarily directed to the parties and, therefore, may not fully address the facts of the case or the panel's decisional rationale.  Moreover, such decisions are not circulated to the entire court and, therefore, represent only the views of the panel that decided the case. A summary decision pursuant to rule 23.0 or rule 1:28 issued after February 25, 2008, may be cited for its persuasive value but, because of the limitations noted above, not as binding precedent.  See Chace v. Curran, 71 Mass. App. Ct. 258, 260 n.4 (2008).

COMMONWEALTH OF MASSACHUSETTS

APPEALS COURT

22-P-896

COMMONWEALTH

vs.

DANA W. GRIFFITH.

MEMORANDUM AND ORDER PURSUANT TO RULE 23.0

After a District Court jury trial, the defendant, Dana W. Griffith, was convicted of threatening to commit a crime (murder), G. L. c. 275, § 2; breaking and entering at night with intent to commit a felony, G. L. c. 266, § 16; defacing property, G. L. c. 266, § 126; receiving stolen property (over $1200), G. L. c. 266, § 60; and stalking, G. L. c. 265, § 43 (a).  He claims multiple errors in the judge's evidentiary rulings before and at trial, in her allowance of a pretrial motion to dismiss one complaint and amend another, and in her denial of his motion for a new trial.  We affirm.

Background.  1.  Factual background.  We assume familiarity with the record and recite pertinent facts as the jury could have found, reserving others for later discussion.  The defendant dated the victim for approximately four or five weeks

before she broke things off.  After those "normal" initial weeks, the relationship "became violent, harassing, threatening, [and] very scary."  The defendant would send the victim messages, call her "all day," and "show up uninvited" at her home, even after she moved to try to get away from him.  He reacted "[v]ery violently" when she refused to do things, including "try[ing] to force his way" when she refused to have sex with him.

Using multiple phone numbers, the defendant called both the victim and her brother and made threats to both.  The victim changed her phone number three times, yet the defendant continued to call her.  The defendant posted fake advertisements online identifying the victim as a sex worker and listing her name and address.

Approximately three months after the victim moved out of Boston, she returned to her new apartment at approximately 10 P.M. to find the defendant "lurking" outside her building.  She had seen him there before and had contacted the police.  On this occasion, the defendant had been calling the victim "all day," "easily over 60 times."  The victim ran inside and made sure all the doors and windows were locked, but opened the door when the defendant knocked, grabbing a small toy bat as he approached.  They ended up outside, where the defendant pushed, kicked, and repeatedly punched the victim in the face and head.

2

In the following weeks, the defendant continued to call the victim repeatedly, saying he was going to "get" her, that she needed to move, and to leave the country. He sent a message that said, "Hoe, I'll kill you." Early one morning, a big rock came through the victim's bedroom window while she was lying in bed. Feeling she was no longer safe, the victim took her daughter, left the apartment, and moved to a shelter. It was August 2020 and the COVID-19 state of emergency was still in effect; it took the victim a few months to find a new home, pack, and move. During the process, her mailbox at her former apartment was pried open and her mail was taken, so she changed her address.

On the day of her planned move, she returned to her apartment and found that a locked sliding door had been opened. Her moving boxes had been opened, their contents strewn on the floor, and her apartment was "completely destroyed." She found her televisions, electronics, and her daughter's laptop in the bathtub with the water running. A suitcase containing birth certificates, passports, and other vital documents, as well as sentimental photographs and papers, was missing. While the victim and her brother surveyed the damage, the defendant repeatedly called and texted the victim's brother. The victim called the defendant, who "started to laugh" and asked her, "did you see your bathtub?"

3

2.  Procedural history.  Before trial, there was extensive motion practice about evidence of the defendant's prior bad acts and the use of certified prior convictions to impeach him if he testified.  After hearing argument on four different dates, the judge ruled preliminarily that four of the defendant's prior convictions would be admissible for impeachment purposes if he testified.[1]  The judge stressed that, if the defendant testified, she would reevaluate her decision in light of the evidence presented.

In a written decision, the judge permitted the victim to testify to the history of her relationship with the defendant, including that she "broke up with the defendant due to his controlling behavior" and that he "often tried to force her to have sex."  After addressing its probative value and the risk of unfair prejudice to the defendant and distraction of the jury, as well as the possibility of a trial within a trial, the judge excluded evidence that the defendant was accused and tried for violation of an abuse prevention order, malicious destruction of property, and assault and battery in a case involving the same victim.

---

[1] The convictions were for malicious destruction of property and assault and battery and malicious destruction of property and annoying telephone calls.

4

Discussion. 1. Prior bad acts evidence. Two witnesses mentioned that the defendant was on probation. Each time, the defendant objected to the testimony and moved for a mistrial. The judge sustained the objections and struck the testimony. After the first reference to the defendant's being on probation, she instructed the jury that the testimony was "not evidence in this case" and that they were to disregard it. She also forcefully and promptly instructed the jury that they were "not to consider" struck evidence, to "put it out of [their] mind[s]" as it was "not part of [their] consideration," and "ordered" the jury "not to use it or consider it in any way in deciding this case." She denied each motion for a mistrial.

"The decision whether to declare a mistrial is within the discretion of the trial judge." Commonwealth v. Mullane, 445 Mass. 702, 711 (2006). "Where a party seeks a mistrial in response to the jury's exposure to inadmissible evidence, the judge may correctly rel[y] on curative instructions as an adequate means to correct any error and to remedy any prejudice to the defendant" (quotations and citations omitted). Id. "Such reliance on curative instructions stems from the notion that '[j]urors are expected to follow instructions to disregard matters withdrawn from their consideration.'" Commonwealth v. Kilburn, 426 Mass. 31, 38 (1997), quoting Commonwealth v. Cameron, 385 Mass. 660, 668 (1982). The judge's curative

5

instructions were prompt, forceful, thorough, and accurate.  We discern no error. [2]

The defendant also challenges the judge's pretrial ruling allowing the victim to testify that the defendant "often forced her to have sex."  The judge concluded that this testimony could be admitted as evidence of "the nature of [the victim's] dating relationship with the defendant, as well as the history of how and why their relationship ended," and noted that the acts "were probative of the elements of stalking because they provided context for [the victim's] fear."  "[D]eterminations of evidentiary 'admissibility, probative value, and unfair prejudice are left to the sound discretion of the trial judge[] and will not be overturned absent clear error.'"  Commonwealth v. Fernandes, 492 Mass. 469, 483 (2023), quoting Commonwealth v. Melendez, 490 Mass. 648, 662 (2022).

"Evidence of a defendant's . . . bad acts is not admissible to demonstrate the defendant's bad character or propensity to commit the crime charged."  Fernandes, 492 Mass. at 483, quoting Commonwealth v. West, 487 Mass. 794, 805 (2021).  However, such

---

[2] A cursory argument directed at the defendant's sister's comment that he was "locked up" is similarly unavailing.  It appears that neither the judge nor the lawyers heard the sister's testimony.  In the absence of any indication that the jury heard it, and given that it was made in passing, the question was struck, the witness was instructed not to answer, and the judge appropriately charged the jury about struck evidence and their role in analyzing the evidence, we discern no error.

6

evidence may be admissible "if relevant for some other probative purpose, including to show intent, motive, state of mind, or some other relevant issue," Commonwealth v. Robidoux, 450 Mass. 144, 158 (2007), and if its probative value outweighs the risk of unfair prejudice. Commonwealth v. Philbrook, 475 Mass. 20, 26 (2016).

After applying the two-part inquiry for assessing the admissibility of this evidence, the judge permissibly concluded that it related to an element of one charge and was "relevant to establish context for the allegations, as well as the defendant's state of mind, motive, and intent." See Commonwealth v. Dung Van Tran, 463 Mass. 8, 15 (2012); Commonwealth v. Carlson, 448 Mass. 501, 507-508 (2007). The defendant asserts that this testimony added little to the substantial other evidence of the "hostile" relationship between the victim and the defendant, but the task of weighing the evidence was for the trial judge, and she did not abuse her broad discretion in admitting this testimony. Her limiting instructions, given during the victim's testimony and again at the end of the trial, further minimized the possibility that the jury would misuse this evidence. See, e.g., Commonwealth v. Walker, 442 Mass. 185, 202 (2004).

2. Conditional admission of prior convictions for impeachment. "Pursuant to G. L. c. 233, § 21, the prior

7

convictions of a witness, including the defendant, are admissible for impeachment purposes.  Prior convictions may be introduced in the discretion of the judge, who weighs the danger of unfair prejudice that might result from the admission of such evidence against its probative value for impeachment purposes." Commonwealth v. Brown, 451 Mass. 200, 202-203 (2008).  Although the defendant did not testify, he may challenge the judge's ruling.  See Commonwealth v. Crouse, 447 Mass. 558, 564 (2006). If we determine that the judge abused her discretion, we review for prejudicial error.  "An error is not prejudicial if it 'did not influence the jury, or had but very slight effect.'" Commonwealth v. Cruz, 445 Mass. 589, 591 (2005), quoting Commonwealth v. Flebotte, 417 Mass. 348, 353 (1994).

"In conducting a review for an abuse of discretion, we have analyzed several factors," such as "whether the prior conviction is substantially similar to the crime charged, whether the prior conviction involves a crime implicating truthfulness, whether there were other prior convictions that the Commonwealth could have used to impeach the defendant, and whether the judge conducted the required balancing test" (citations omitted). Commonwealth v. Little, 453 Mass. 766, 773 (2009).  Although "[e]vidence of a prior conviction, especially of a violent crime or one involving dishonesty, is probative as to the defendant's credibility as a witness," Commonwealth v. Whitman, 416 Mass.

8

90, 93 (1993), quoting Commonwealth v. Elliot, 393 Mass. 824, 835 (1985) (Lynch, J., concurring), "where the prior conviction is for a crime substantially similar or similar in nature to the crime for which the defendant is on trial, the danger of unfair prejudice is most likely to arise." Commonwealth v. Reid, 400 Mass. 534, 538 (1987). In such a case, the "judicial tilt . . . would be toward exclusion." Commonwealth v. Chartier, 43 Mass. App. Ct. 758, 762 (1997).

Here, the defendant was charged with multiple crimes, of which one -- assault and battery on a household member -- was, as the judge acknowledged, very similar to one of the prior convictions (assault and battery) the Commonwealth sought to use. This substantial similarity, standing alone, does not mean that the judge abused her discretion in admitting the prior conviction. The Supreme Judicial Court has "never held that admission of a prior conviction substantially similar to that for which the defendant is on trial is per se error." Reid, 400 Mass. at 538. See Crouse, 447 Mass. at 565 n.6; Commonwealth v. Bly, 444 Mass. 640, 654 (2005); Elliot, 393 Mass. at 833-834 (questioning, without deciding, whether it was error to admit defendant's prior conviction for rape when he was on trial for rape). Rather, even when the prior conviction is for the same crime, "there remains the application of the sound discretion of the judge" to make that determination. Chartier, 43 Mass. App.

9

Ct. at 762. "[T]hat residue of discretion does not vanish when the prior conviction is for the same crime rather than for one substantially similar. The trial judge's duty is still to balance unfair prejudice and utility to the jury." Id.

The judge considered this issue at four pretrial hearings, assembled (on her own, it appears) a table of the defendant's potential impeaching convictions, required the Commonwealth to identify the relevant convictions, and "read a number of cases on topic." We cannot fault her process. But the case is a close one; unlike in Chartier, 43 Mass. App. Ct. at 762-763, other convictions, listed on the judge's table, were presumably also available for impeachment, without the dangers posed by admitting the assault and battery conviction.

Here, we need not determine whether the judge abused her discretion in admitting the conviction because the defendant has not demonstrated prejudice. See Flebotte, 417 Mass. at 353; Commonwealth v. Suarez, 95 Mass. App. Ct. 562, 570 (2019). The evidence against the defendant was overwhelming. Among other evidence, the jury heard from the victim, her brother, and the defendant's sister that the defendant threatened, harassed, and stole from the victim. They saw multiple text messages in which he threatened to harm or kill the victim and her brother. They heard evidence of the defendant's assault on the victim, both from the victim herself and from a responding police officer.

10

They saw images of items taken from the victim's home and recovered from the defendant's car, including the victim's personal photographs, medical bills, personal letters, and identity documents.  They heard that, when the victim arrived home and found her electronics in her bathtub with the water running, she called the defendant, who laughed and asked, "Did you see your bathtub?"

"Where the defendant chooses not to testify in the face of a ruling on the admissibility of his prior convictions, the failure to make [an offer of proof] may be construed against him on the questions of prejudice and substantial risk."  Little, 453 Mass. at 775 n.8.  Faced with this substantial evidence of the defendant's guilt, and without an affidavit or offer of proof describing how his testimony might have affected that evidence, we conclude that the defendant has failed to demonstrate prejudice.[3]

3.  Vouching for victim's credibility.  The victim testified pursuant to a nonprosecution agreement.  A redacted version of the agreement, omitting the victim's agreement to

---

[3] The judge also preliminarily admitted, for impeachment purposes, the defendant's prior convictions for malicious destruction of property and annoying telephone calls.  These rulings were amply supported by the record and, unlike the prior conviction for assault and battery, were not for a "substantially similar," or the same, offense for which the defendant was on trial.  Whitman, 416 Mass. at 94.  Their admission was not an abuse of discretion.

"provid[e] full, complete and truthful information" and to "answer completely and truthfully" questions from the District Attorney's Office and law enforcement officers, was admitted in evidence during the defendant's cross-examination of the victim.

The prosecutor opened her redirect examination of the victim by directly addressing the redacted portions of the nonprosecution agreement, asking, "Does your part of the agreement mean that you're going to testify truthfully?"  The defense timely objected, but before the judge sustained the objection, the witness answered, "Yes."  After the prosecutor asked another question about the victim's "responsibilities" under the agreement, the judge called the parties to sidebar and said forcefully that the response was inadmissible.  Defense counsel asked the judge to instruct the jury to disregard the witness's answer, and the judge did so.

We review this claim to determine whether, by not sua sponte further instructing the jury, the judge abused her discretion.  Because the defendant did not object to the judge's instruction at trial, if we find error, we ask whether the error created a substantial risk of a miscarriage of justice, see Commonwealth v. AdonSoto, 475 Mass. 497, 504 (2016); that is, whether any error was "sufficiently significant in the context of the trial to make plausible an inference that the [jury's]

12

result might have been otherwise but for the error" (citation omitted). Commonwealth v. Alphas, 430 Mass. 8, 13 (1999).

"Ordinarily, questions concerning an agreement's requirement that a cooperating witness give 'truthful' testimony should be reserved for redirect examination after cross-examination has attacked the witness's credibility based on the plea agreement." Commonwealth v. Rolon, 438 Mass. 808, 813 (2003). So it happened here. The defense strategy was to attack the victim's credibility. It was for this purpose that defense counsel introduced the redacted nonprosecution agreement, as his closing argument bore out. In the circumstances, limited examination on this topic was permissible. We discern no abuse of discretion in the trial judge's decisions to foreclose this line of questioning, sustain the objection, strike the answer, and instruct the jury to disregard it.

4. Amendment of stalking complaint. "The purpose of a complaint or indictment is 'to furnish the accused with such a description of the charge against him as will enable him to make his defence.'" Commonwealth v. Domino, 465 Mass. 569, 575-576 (2013), quoting Commonwealth v. Montanino, 409 Mass. 500, 512 (1991). "[A] judge may allow amendment of the form of a complaint or indictment if such amendment would not prejudice the defendant or the Commonwealth." Commonwealth v. Bolden, 470

13

Mass. 274, 281 n.5 (2014), quoting Mass R. Crim. P. 4 (d), 378 Mass. 849 (1979). "Whether an amendment is one of substance or form turns upon double jeopardy principles." Domino, supra at 575, quoting Commonwealth v. Bynoe, 49 Mass. App. Ct. 687, 691 (2000). "[I]f an acquittal on the original charge would not bar prosecution of the amended charge, the amendment is one of substance." Domino, supra, quoting Bynoe, supra. "The time alleged for an offense is ordinarily treated as a matter of detail rather than substance." Commonwealth v. Knight, 437 Mass. 487, 492 (2002), quoting Commonwealth v. Campiti, 41 Mass. App. Ct. 43, 50 (1996).

To prove stalking, the Commonwealth must prove, among other things, a "knowing pattern of conduct or series of acts over a period of time." G. L. c. 265, § 43 (a). More than two acts are required. Commonwealth v. Julien, 59 Mass. App. Ct. 679, 684 (2003). Although it contains a temporal element, we do not read this statutory language to make the date an essential element of the offense. See Commonwealth v. King, 387 Mass. 464, 467 (1982).

The initial complaints charged two stalking offenses over two different time periods, while the amended complaint charged one stalking offense over a combined time period. The defendant maintains that, because acquittal on either of the two initial complaints would not bar prosecution on the amended charge, the

14

amendment was one of substance.  We are not persuaded.  Because the date is not an essential element of stalking, the original complaints did not charge two distinct crimes, but rather represented one permissible way of capturing the alleged criminal conduct.  Cf. Campiti, 41 Mass. App. Ct. at 50 (if grand jury had been presented with allegations of two robberies of same victim on distinct dates and indicted on only one robbery, conviction on proof of only unindicted robbery would be impermissible).  The amended complaint, capturing the same alleged wrongdoing over the same dates detailed in the Commonwealth's bill of particulars, was another permissible expression of the crime.  It did not "materially change[]" the allegations against the defendant (citation omitted), Knight, 437 Mass. at 492, or impede the defendant's ability to prepare his defense.  See Domino, 465 Mass. at 575-576.  There was no error.

5.  Selection of alternate juror.  To select alternate jurors, the court "shall direct the clerk to place the names of all of the available jurors . . . into a box or drum and to select at random the names of the appropriate number of jurors necessary to reduce the jury" to the number needed for deliberation.  G. L. c. 234A, § 68.  This is what the judge did.

The defendant, who is Black, maintains that the judge erred, and the prosecutor reneged on a promise, by following

15

this process and thereby selecting the only Black juror as an alternate.  We are not persuaded that the Commonwealth agreed to exclude this juror from the alternate selection process; even had there been an agreement, the judge would have been under no obligation either to honor or to enforce it in contravention of the statutorily prescribed process.  We perceive no error.

6.  <u>Ineffective assistance of counsel</u>.  A successful claim for ineffective assistance of counsel requires a showing that (a) counsel's performance fell "measurably below that which might be expected from an ordinary fallible lawyer," and (b) such conduct likely deprived the defendant of "an otherwise available, substantial ground of defence."  <u>Commonwealth</u> v. <u>Saferian</u>, 366 Mass. 89, 96 (1974).  "A defendant seeking a new trial based on a claim of ineffective assistance of counsel bears the burden of establishing both prongs of the <u>Saferian</u> test."  <u>Commonwealth</u> v. <u>Sullivan</u>, 469 Mass. 621, 629 (2014).

The defendant moved for a new trial, contending that his trial counsel was ineffective because he failed to redact from the victim's nonprosecution agreement, which was admitted as an exhibit, a reference to a complaint (for violation of a G. L. c. 209A order) that had been dismissed immediately before trial. We review the denial of the motion for abuse of discretion, <u>Commonwealth</u> v. <u>Grace</u>, 397 Mass. 303, 307 (1986), reversing only if "it appears that justice may not have been done."  Mass. R.

16

Crim. P. 30 (b), as appearing in 435 Mass. 1501 (2001).  Where, as here, the motion judge was also the trial judge, we give "special deference to the judge's findings of fact and . . . decision on the motion."  Commonwealth v. Kolenovic, 471 Mass. 664, 672-673 (2015).

We discern no abuse of discretion in the judge's assessment.  She permissibly concluded that counsel's "oversight" in not redacting the charge was not performance below that of an ordinary fallible lawyer.  She reasoned that, although the error resulted in the jury's being exposed to a charge for which the defendant was not on trial, the jury were already aware of the abuse prevention order through other aspects of the trial.  Furthermore, the jury were instructed that the charges before them were limited to those alleged in

17

the complaints.  Jurors are presumed to follow the judge's instructions.  <u>Commonwealth</u> v. <u>Silva</u>, 482 Mass. 275, 290 (2019).

<u>Judgments affirmed</u>.

<u>Order denying motion for new trial affirmed</u>.

By the Court (Meade, Hershfang & D'Angelo, JJ.[4]),

*Anne M. Thomas*

Assistant Clerk

Entered:  January 18, 2024.

---

[4] The panelists are listed in order of seniority.